·33 So.2d 324

### Ex parte HACKER et al.
### 6 Div. 523.

Supreme Court of Alabama.

June 12, 1947.

Rehearing Denied Jan. 15, 1948.

John L. Busby, Earl McBee, D. C. Ewing, Harold M. Cook, and Jerome Phillips, all of Birmingham, for petitioners.

Horace C. Wilkinson, of Birmingham, for complainants Greenwood.

White, Bradley, Arant & All, of Birmingham, amici curiae.

BROWN, Justice (dissenting).

On the joint application of the petitioners we granted the common law writ of certiorari to review the proceedings and decree of the Circuit Court of Jefferson County, in Equity, adjudging petitioners guilty of civil contempt for refusing to obey the mandate of the final decree entered on the 27th day of September, 1946, in the case of Arthur Greenwood et als. against The Hotel and Restaurant Employees Interna-

tional Alliance and Bar Tenders International League of America et als., case No. 69398 in said circuit court; and a return embodying the record and proceedings of the circuit court duly certified has been made by the register. The case was argued and submitted on March 19, 1947, on motion and merits. The motion entered upon the motion docket with notice to petitioners was made by Arthur Greenwood et als., to dismiss or strike the petition for certiorari and dismiss the proceedings on the ground that the petitioners have a complete and adequate remedy by appeal.

This motion is without merit. It is the settled law in Alabama that common law certiorari is the remedy to review a judgment or decree holding persons guilty of contempt, who are not imprisoned, and if imprisoned, habeas corpus is the remedy. Wetzel v. Bessemer Bar Association, 242 Ala. 164, 5 So.2d 722; Ex parte Dickens, 162 Ala. 272, 50 So. 218; Bankston v. Lakeman, 219 Ala. 508, 122 So. 819; Ex parte Hill, 229 Ala. 501, 158 So. 531; Ex parte John Hardy, 68 Ala. 303. The motion to dismiss the proceeding is, therefore, overruled.

Review by the common law writ of certiorari is limited to the question of jurisdiction of the court to enter the decree which was allegedly violated or disregarded and for errors apparent upon the record. If there is any evidence to support the trial court's conclusion of fact on which the contempt is predicated, such conclusion is not subject to review. Ex parte Wetzel, 243 Ala. 130, 8 So.2d 824; Ex parte Slaughter, Fire Marshall, 217 Ala. 515, 116 So. 684.

Procedural irregularities in the injunction proceedings are not regarded as errors apparent. Ex parte Wetzel, supra; Rochelle v. Rochelle, 237 Ala. 530, 187 So. 451.

Petitioners' major contention is that there was an absence of jurisdiction in the circuit court to render the decree of September 27th, 1946, and it is, therefore, void.

By Chapter 4, Article 2, Subdivision 2, embracing §§ 129 through 131, Title 13, Code of 1940, equity jurisdiction is conferred upon the circuit court in all civil causes "in which a plain and adequate remedy is not provided in the other judicial tribunals." Code of 1940, Title 13, § 129. And § 1038, Title 7, Code of 1940, provides that injunctions may be granted returnable into any of the circuit courts of this state by the judges of the supreme court, court of appeals or circuit courts or judges of courts of like jurisdiction.

The record before us shows that the court's jurisdiction was duly invoked by a bill of complaint filed by Arthur Greenwood et als., as complainants, in the Circuit Court of Jefferson County, In Equity, against The Hotel and Restaurant Employees International Alliance and Bar Tenders International League of America, a voluntary unincorporated labor organization, and Culinary Workers Union Local 459 of the Hotel & Restaurant Employees International Alliance and Bar Tenders International League of America, an unincorporated labor organization, Carl Hacker and George Hardwick, in conformity with Alabama Equity Rule 2. Code of 1940, Title 7 Appendix, p. 1037. And §§ 143 and 144 of Title 7, Code of 1940, providing for service of process, is notice to and binding upon the individuals constituting the organization or association. Grand International Brotherhood, etc. v. Couch, 236 Ala. 611, 184 So. 173; 7 C.J.S. Associations, § 1.

The bill in the injunction proceedings alleges that on the 4th of September, 1946, the individual defendants presented to the Greenwoods a contract for negotiation as to wages, hours and working conditions of employees written by Hacker and were informed by Greenwood that he and his partners were not in position to engage in negotiations until they had time to consider the contract and obtain legal advice in respect thereto. That the contract was left with the Greenwoods and said individual defendants went away but returned on Friday, the 6th of September for an answer and when the Greenwoods informed them that they had been unable to consult counsel in respect to the contract, Greenwood was informed by Hacker that they could wait no longer and the strike was called and the picket line set up.

The proposed contract, inter alia, contained the following provisions:

"Article I. Type of Shop: The Employer agrees to hire and retain in his employ no other of the employees herein mentioned but members in good standing in the Union and to hire them through the office of the Union. The Union shall have a 24-hour limit in which to furnish the requested employees. If the Union is not in a position to furnish the employees requested within that time, then the Employer shall have the right to hire from the open market, provided, however, that the employees so hired shall not be objectionable to the Union, and that employees so hired shall perfect their membership in the Union within FIFTEEN DAYS after being hired. All employees so hired shall be on probation for the first fifteen days of their employment and subject to dismissal without cause.

"Article II. Interviews of Employees: The official representative of the Union shall have access to the property of the Employer during the regular business hours for the purpose of talking with employees on duty concerning Union business."

"Article XIII. Dressing Rooms, Lockers, Toilets: The Employer shall provide for his employees sanitary toilets and dressing rooms, and an individual locker for each employee with a lock and key for it. The *Employer shall be financially responsible for losses incurred through his failure to comply with the latter part of this paragraph.* [Italics supplied.]

"Article XIV. Fines: There shall be no employer fines for any purpose nor shall there be any charges for breakage unless through willfull or gross neglect on the part of an employee.

"Duration of Agreement: This agreement constitutes an understanding between ———— operating the Greenwood Cafe located at 407 North 20th Street, in the City of Birmingham, Alabama, and the Culinary Workers Union Local 454 of the Hotel & Restaurant Employees International Alliance and Bartenders International League of America, affiliated with the American Federation of Labor as the duly authorized and qualified agent for the employees now employed, or who may hereafter be employed at the above address or any other establishment which may in the future be operated in Jefferson County by the above named Employer.

"It is expressly understood between the parties that should the above establishments be sold or leased as a concession during the life of this agreement, then all the terms and conditions of this agreement must continue to be in full force as to the establishment and is thereby upon the heirs, executors and assigns. * * *."

The bill further alleges: "The said Carl Hacker and the said George Hardwick at that time stated that they couldn't wait; that Complainants had had time enough and thereupon left the complainants' place of business and about 11:45 a. m. thereafter the Local and International Union, acting through the said Carl Hacker and the said George Hardwick, duly authorized so to do by said organizations, called a strike of the employees of the Complainants and stationed pickets at the front and rear entrances of Complainants' place of business. Said pickets varied in number from two to ten and included the said Carl Hacker and the said George Hardwick. Said pickets displayed large placards approximately three feet square on which was printed the words 'Greenwood's is on Strike. Employees demand more Wages and less Hours.' Said pickets congregated around the front and rear of Complainants' said place of business and displayed said placards and walked up and down the sidewalk in front of the main entrance of Complainants' place of business and up and down the alley entrance to Complainants' place of business and informed people that the Unions above referred to called a strike and that prospective customers who were about to enter the place of business would be low down and disreputable if they crossed the picket line and they greatly interferred with the transaction of business and have made it impossible for the Complainants to transact business as long as said picket line is maintained.

"Complainants aver that prior to the filing of this bill and since the calling of said strike, they informed the Respondents that they always had been and are now ready, willing and able to negotiate with the Respondents with respect to a contract relating to wages, hours and working condi-

tions of the employees of the Complainants and that if they were unable to agree with the Respondents on the terms and conditions of such contract, they were ready, willing and able and would submit their differences to arbitration, and they requested the Respondents to call off said strike and to negotiate with the Complainants for a contract relating to wages, hours and working conditions with assurance that if any differences between the parties could not be amicably adjusted the Complainants would agree to submit such differences to arbitration and enter into such contract as was determined by arbitration to be fair and just. The *respondents refused and rejected* said *offer* and *stated* that the *strike would be continued and the pickets maintained until the Complainants signed a contract.* * * * " [Italics supplied.]

" * * * And Complainants are advised by counsel, informed and believe and on such advice, information and belief aver that the calling of said strike and the maintenance of said pickets was a *wanton and malicious invasion of the rights of Complainants* and that Complainants are entitled to recover compensatory and punitive damages of the Respondents. * * * " [Italics supplied.]

The bill, after its filing, was presented to Hon. Richard V. Evans, one of the Judges of the Circuit Court, who granted fiat and directed the register to issue the injunction upon the complainant filing a bond "in the manner and form prescribed by law and approved by the register." The writ of injunction was duly issued by the register and served by the sheriff on the 7th day of September, 1946, on the named defendants. The facts of the filing of the bill, granting of the injunction and the constituent elements thereof are also recited in the petition for writ of certiorari.

While it is well settled that labor has a right to organize and appoint a bargaining agent to deal with employers in respect to wages, hours and working conditions and to strike and to peacefully picket and carry signs advertising to the public and to the employer or the prospective employer, the employer has the converse rights under the law, as stated by this court in Hardie-Tynes Mfg. Co. v. Cruse, et al., 189 Ala. 66, 66 So. 657:

"The English and American courts have, we believe, without exception, held that the right to conduct one's business, without the wrongful and injurious interference of others, is a valuable property right which will be protected, if necessary, by the injunctive processes of equity." 189 Ala. at pages 73 and 74, 66 So. at page 660. And it cannot be denied that the owner of such business had a right to contract in respect thereto without intimidation or coercion.

This principle has been recently reaffirmed by this court in the "White Elephant" case. Carter v. Knapp-Motor Co., 243 Ala. 600, 11 So.2d 383, 384, 144 A.L.R. 1177, wherein it was observed, after quoting the substance of the bill's averments: "The bill thus clearly discloses that defendants are actuated by one motive only, that is, of coercing complainant, who was under neither legal nor moral obligation to do so, to give them another Hudson car.

"Our decisions are to the effect that the right to conduct one's business without the wrongful interference of others is a valuable property right which will be protected, if necessary, by injunctive process. Bowen v. Morris, 219 Ala. 689, 123 So. 222. And the enjoyment of the good name and good will of a business is likewise a valuable property right subject to like protection. Bankers' Fire & Marine Ins. Co. v. Sloss, 229 Ala. 26, 155 So. 371. One's employment, trade or calling is likewise a property right, and the wrongful interference therewith is an actionable wrong. United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520."

The petitioners here cite and place much store on the ruling of the Supreme Court of the United States in Swing's case, (American Federation of Labor v. Swing), 312 U.S. 321, 61 S.Ct. 568, 569, 85 L.Ed. 855, wherein that court speaking by Justice Frankfurter observed: " * * * But our concern is with the final decree of the appellate court. On its face the permanent injunction in that decree rested on the explicit avowal that 'peaceful persuasion' was forbidden in this case because those who were enjoined were not in Swing's

employ. Moreover, as we have seen, the supreme court of Illinois dismissed proceedings before it to review that decree on representations that the decree was in accordance with its mandate on the temporary injunction.

"Since the case clearly presents a substantial claim of the right to free discussion and since, as we have frequently indicated, that right is to be guarded with a jealous eye, Herndon v. Lowry, 301 U.S. 242, 258, 57 S.Ct. 732, 739, 81 L.Ed. 1066; Schneider v. State, 308 U.S. 147, 161, 60 S.Ct. 146, 150, 84 L.Ed. 155; United States v. Carolene Products Co., 304 U.S. 144, 152 note, 58 S.Ct. 778, 783 note, 82 L.Ed. 1234, it would be improper to dispose of the case otherwise than on the face of the decree, which is the judgment now under review. We are therefore not called upon to consider the applicability of Meadowmoor Dairies v. Milk Wagon Drivers' Union, supra [371 Ill. 377, 21 N.E.2d 308], the circumstances of which obviously present quite a different situation from the controlling allegations of violence and libel made in the present bill.

"All that we have before us, then, is an instance of 'peaceful persuasion' disentangled from violence and free from 'picketing en masse or otherwise conducted' so as to occasion 'imminent and aggravated danger.' Thornhill v. Alabama, 310 U.S. 88, 105, 60 S.Ct. 736, 746, 84 L.Ed. 1093. We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him. * * *"

In a more recent utterance of the Supreme Court of the United States, the court, speaking through Justice Rutledge, observed:

"* * * The First Amendment is a charter for government, not for an institution of learning. 'Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts. Cf. Abrams v. United States, 250 U.S. 616, 624, 40 S.Ct. 17, 20, 63 L.Ed. 1173, and Gitlow v. New York, 268 U.S. 652, 672, 45 S.Ct. 625, 632, 69 L.Ed. 1138, dissenting opinions of Mr. Justice Holmes. Indeed, the whole history of the problem shows it is to the end of preventing action that repression is primarily directed and to preserving the right to urge it that the protections are given." Thomas v. Collins, 323 U.S. 516, 537, 65 S.Ct. 315, 326, 89 L.Ed. 430.

"Accordingly, decision here has recognized that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty. National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348. Decisions of other courts have done likewise. *When to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed.* Cf. National Labor Relations Board v. Virginia Electric & Power Co., supra. But short of that limit the employer's freedom cannot be impaired. The Constitution protects no less the employees' converse right. Of course espousal of the cause of labor is entitled to no higher constitutional protection than the espousal of any other lawful cause. It is entitled to the same protection." [Italics supplied.] Thomas v. Collins, supra, 323 U.S. 516, at pages 535, 536, 65 S.Ct. 315, 326, 89 L.Ed. 430.

Justice Douglas in concurring in the foregoing opinion observed:

"* * * No one may be required to obtain a license in order to speak. *But once he uses the economic power which he has over other men and their jobs to influence their action, he is doing more than exercising the freedom of speech protected by the First Amendment.* That is true whether he be an employer or an employee. But as long as he does no more than speak he has the same unfettered right, no matter what side of an issue he espouses." [Italics supplied.] 323 U.S. 516, at pages 543, 544, 65 S.Ct. 315, 329, 89 L.Ed. 430.

We quote from the decree of the court in the injunction case and the finding of fact therein.

"The court is therefore of the opinion that the respondents should be enjoined

as prayed for in the bill as last amended until such time as they shall be willing to accord and do accord to complainants a reasonable opportunity to negotiate with the respondents concerning a contract with the employees of the complainants' respecting wages, hours and working conditions and that failing or refusing so to do, that the respondents should be permanently enjoined.

"The court is of the opinion and further finds from the evidence that such reasonable time was not given the complainants, *that the complainants did not have a reasonable opportunity to make the investigation necessary to an intelligent negotiation and neither were they given a reasonable opportunity to negotiate with the respondents and that the respondents refused to enter into an arbitration agreement as they were requested by complainants to do.* And this refusal to enter into an arbitration agreement apparently militates against the respondents' contention that they were acting in the best interest of the Union inasmuch as it appears that such refusal was for the purpose of forcing a contract on complainants and coercing them into signing the contract under duress and without such reasonable opportunity and time being afforded.

"The court is of the further opinion that the respondents should be separately and severally enjoined from using a strike in this way and for such purpose and that they should not be permitted to interfere with the complainants' business in that way in order to compel them to enter into a contract without the privilege of advice of counsel and investigation and negotiation. * * *."

The decree thereupon restrained or enjoined the defendants from calling a strike or aiding or abetting in the continuance of a strike against Greenwood Cafe, Arthur Greenwood, Spiro Greenwood and Harry Greenwood and from picketing or attempting to picket the complainants' place of buisness known as the Greenwood Cafe in Birmingham, Alabama, located at 407 North 20th Street; from maintaining or attempting to maintain pickets at or near the Greenwood cafe; taking any steps to induce Complainants' employees or any of them not to work for the complainants; (e) seeking in any way to disrupt the normal operation of Greenwood Cafe; (f) unlawfully interfering with any person seeking to lawfully transact business with the complainants, it being the purpose and intention of the Court that said injunctions shall remain in full force and effect until the Respondents shall have accorded and extended to the complainants the privileges and opportunities above referred to and in the event such privileges and opportunitites are not accorded and extended, then the injunction shall be final and perpetual.

"It is further ordered, adjudged and decreed by the court that the mandatory injunction heretofore issued to the Hotel and Restaurant Employees International Alliance and Bartenders International League of America, a voluntary unincorporated labor organization, its servants, agents, officers and employees and Culinary Workers Union Local 454 of the Hotel and Restaurant Employees International Alliance and Bartenders International League of America, a voluntary unincorporated labor organization, its servants, agents, officers and employees, and Carl Hacker and George Hardwick, separately and severally, commanding each of them to forthwith and immediately cancel and annul and call off the strike which they called against Greenwood's Cafe on the 6th day of September, 1946, be and the same is hereby made final and perpetual."

In the final decree of September 27, 1946, the court found as a fact, on testimony given ore tenus that the complainants were not given reasonable time to procure legal advice and consider the advisability of entering into the proposed contract. It is well settled that what constitutes a "reasonable time" depends "on the context and attendant circumstances" and is a question of fact to be determined by the trier or triers of the fact. Ex parte Woodward Iron Co., 211 Ala. 111, 99 So. 649; McCleskey & Whitman v. Howell Cotton Co., 147 Ala. 573, 42 So. 67; Alford v. Creagh, 7 Ala.App. 358, 62 So. 254; 62 C.J., pp. 1182, 1183, § 2.

The circuit court's conclusion of fact on the evidence as to whether the complain-

ants in the injunction suit were given a reasonable time to consider the proposed contract *and to obtain legal advice in respect thereto,* is a right recognized by the court in Thomas v. Collins, supra, is conclusive on this limited review by writ of certiorari. We are, therefore of opinion and hold that the bill in the injunction proceeding was not without equity and the circuit court had jurisdiction to entertain it.

The respondents in the contempt proceeding cite and rely on the ruling of this court in Board of Revenue of Covington County v. Merrill, 193 Ala. 521, 68 So. 971, 979, as denying the equity of the bill in the Greenwood injunction case. That contention is met by the following utterances of the opinion in the Merrill case.

"A careful examination of the bill filed in this cause on the 4th day of December, 1914, discloses that complainant therein was seeking to review the action of the board of revenue of Covington county by resort to injunction, and to restrain the board from the exercise of its statutory discretion and powers in the building of a new courthouse, without specific averment of facts that amounted to fraud, corruption, or unfair dealing and collusion on the part of the board of revenue or of the members thereof * * *." In that case private property rights were not involved as here.

We now consider the proceeding for contempt. "A proceeding for contempt is sui generis, being neither a 'civil action' nor a 'criminal prosecution' within the ordinary meaning of those terms. Further, it is said that there is no fixed formula for contempt proceedings, and that technical accuracy is not required. They are in general summary in nature. * * * It has been said that a court may adopt its own procedure provided that the contemner is accorded due process of law * * *. A contempt proceeding is generally regarded as an original special proceeding, collateral to, and independent of, the cause in which the contempt arises, although there is some authority in conflict with this statement. It has been said that the fact that the punishment for contempt

is imposed by a judge sitting in equity does not make the contempt proceeding equitable in character, * * *." 17 C.J.S., Contempt, § 62; 43 C.J.S., Injunctions, § 272; Bessette v. W. B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997.

A proceeding for civil contempt ordinarily is not for the protection of the court's dignity and authority but is for the benefit of the complaining party. Where the mandate of the decree alleged to have been violated establishes and protects private property rights, the party injured may initiate the proceeding and must allege with certainty to a common intent such violation and that he has suffered detriment as a proximate consequence of such violation. Such allegations impose on the complaining party the burden of sustaining such allegations by clear and convincing evidence. 43 C.J.S., Injunctions, §§ 272 and 273.

The civil contempt proceeding is not a part of the original injunction proceeding but is supplemental thereto for the enforcement and protection of the property rights of the complainant. Ex parte Dickens, 162 Ala. 272, 50 So. 218; Balkum v. Harper's Adm'r., 50 Ala. 372; Bankston v. Lakeman, 219 Ala. 508, 122 So. 819; Ex parte Miller, 129 Ala. 130, 30 So. 611, 87 Am. St.Rep. 49.

The proceeding in the instant case was initiated by a petition filed by the complainants in the injunction case against two of the respondents named therein, Carl Hacker and George Hardwick, and against Roy Copeland, "John Doe" and "Richard Roe" and alleges that "the individuals whose names are unknown to petitioners" will be substituted when ascertained. After setting up the substance of the injunction proceedings, the scope of the injunction and the final decree of the court rendered on September 27, 1946, and the scope of said decree, heretofore set out, charged that the said Carl Hacker and George Hardwick violated the mandatory injunction in said cause No. 69398 in that "they have each failed or refused to cancel and annul and call off the strike which they called against Greenwood Cafe on the 6th day of September, 1946.

"7. Your complainants aver that the said Carl Hacker, George Hardwick, Roy Copeland, John Doe and Richard Roe, and the individuals whose names are unknown to petitioners, each wilfully violated and are now wilfully violating the prohibitory injunction heretofore issued in this cause, in that each of them, after notice of the issuance of said injunction, and while the same was in force and effect,

"(a) picketed or attempted to picket the Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama.

"(b) Aided or abetted the picketing or attempted picketing of the Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama.

"(c) Sought to disrupt the normal operation of the Greenwood Cafe by walking back and forth in front of the main entrance of the Greenwood Cafe with a placard on their back and chest with the following words printed thereon in large type: 'This House does not employ Union Labor.' or the said individuals just named aided and abetted others whose names are unknown to your petitioners in doing the things charged in this subparagraph.

"8. Your complainants aver that the parties herein charged with the conduct prescribed in sub-paragraphs (a), (b) and (c) above, are servants, agents or employees of the Hotel and Restaurant Employees International Alliance and Bartenders International League of 'America, or said Culinary Workers Union Local 454, or said Carl Hacker or said George Hardwick."

Petitioner prayed for the arrest of the parties named and those engaged in picketing and that they be required to show cause why they should not be punished for contempt. The petition was sworn to by the complainants to the effect that "the facts set out in the foregoing bill are true and correct."

The alleged contemners, other than Copeland, appeared and filed demurrers, two filed motions to quash and one filed answer, taking the points that the Circuit Court of Jefferson County, in Equity, was without jurisdiction to render said final decree; that the decree was void for want of jurisdiction in the court to render the same; that said decree is violative of and circumvents the privileges and immunities guaranteed to them by the 14th Amendment to the Constitution of the United States, the rights of freedom of speech, freedom of lawful assembly and due process of law; is violative and circumvents the public policy of the United States as expressed in the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., the Clayton Act, 38 Stat. 730, and others, as well as the Constitution, statutes, court decisions and the public policy of the State of Alabama.

By leave of the court the petitioners filed a substituted petition on November 6, 1946, which named in lieu of "John Doe and Richard Roe," George Setliffe, John L. Allen, Emerson O. Thorpe, W. S. Burch, J. H. Flowers, M. E. Waller, A. F. Brackett, F. E. Hichter, C. A. Ralston and R. L. Simpson, charging with more elaboration the acts constituting the violation of the injunction embodied in the final decree of the court and charging that said parties named had notice or knowledge, that said parties committed said acts knowing that said prohibitory injunction was in force and effect and violated said prohibitory injunction and committed one or more civil contempts by

"(a) Picketing or attempting to picket the Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama;

"(b) Maintaining or attempting to maintain pickets in front of or near to the Greenwood Cafe Located at 207 North 20th Street in Birmingham, Alabama;

"(c) Seeking or attempting to disrupt the normal operation of Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama, by walking back and forth in front of the main entrance to said Cafe on October 12, 1946, a large number of times and almost continuously for several hours of said date, wearing a placard or placards on which was printed in large type the following words: 'This House Does Not Employ Union Labor.'

"Petitioners further aver and charge that the defendants named in this paragraph were the servants, agents or employees of

the Hotel & Restaurant Employees International Alliance and Bartenders International League of America, or of the said Culinary Workers Union Local No. 45, or of the said Carl Hacker or of the said George Hardwick at the time they committed the acts complained of in subparagraphs (a), (b) and (c) above.

"10. Petitioners aver that before the filing of this petition and while the said prohibitory injunction in the decree of September 27, 1946, was in full force and effect, the defendants named in the preceding paragraph knowing that said prohibitory injunction was in full force and effect, violated said prohibitory injunction and committed a civil contempt by conspiring to picket the Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama, and by committing the following overt act pursuant to said conspiracy, viz: walking back and forth in front of the main entrance to said Cafe on October 12, 1946, a large number of times and almost continuously for several hours during business hours on said date wearing a placard or placards on which were printed the words: 'This House Does Not Employ Union Labor.'

"11. Petitioners aver and charge that before the filing of this petition and while the prohibitory injunction in the decree of September 27, 1946, was in full force and effect, the defendants named in paragraph 9 above, knowing that said prohibitory injunction was in full force and effect, violated said prohibitory injunction twenty-five or more times and each of said defendants committed twenty-five or more separate civil contempts by walking back and forth in front of the main entrance to Greenwood Cafe on October 12, 1946, twenty-five or more times during business hours on said date wearing a placard or placards on which was printed in large type the words: 'This House Does Not Employ Union Labor,' after each of said defendants had notice of said prohibitory injunction, all of which was done by them pursuant to a conspiracy entered into by them to violate the aforesaid prohibitory injunction by picketing or attempting to picket the Greenwood Cafe at 407 North 20th Street in Birmingham, Alabama, on October 12, 1946, in violation of said prohibitory injunction.

"12. Petitioners were caused to lose a large sum of money and were put to great trouble, expense, annoyance and inconvenience including expense for counsel fees, as a proximate consequence of the aforesaid violations of said injunction."

The petition was verified by the Greenwoods to the effect that the facts set up in the foregoing bill are true and correct.

The answer of Hacker and Hardwick admits that they had knowledge of the injunction and final decree but denies that they had "violated the mandatory injunction issued in said cause No. 69398 in any manner or respect whatsoever. They specifically aver and state that they have not failed and refused to cancel and annul or call off the strike, which was called against Greenwood Cafe on the 6th day of September, 1946. To the contrary, the said Carl Hacker immediately notified all of the striking employees and the members of the Culinary Workers Union Local 454 that the injunction had been rendered enjoining the picketing of the premises and that a mandatory injunction had been rendered ordering the cancelling, annuling and calling off of the strike and the said Carl Hacker did request said striking employees and members of the said Local Union to take off their picket signs and to cease and desist from picketing the said Greenwood Cafe, and in conformity with the request of the said Carl Hacker, the said striking employees and members of said Local Union did immediately take off their picket signs and cease and desist picketing said Cafe, and the said Carl Hacker did further request said striking employees and members of said Local Union to attend a meeting the following day in the regular meeting place of said Union for the purpose of reading said injunction to the said striking employees and members of said Union, and the said striking employees and members of the said Union did meet in the said Union meeting place on Sunday following the issuance of said injunction late Saturday evening, and at said meeting the said Carl Hacker did further advise and notify the

said striking employees and members of said Local Union that said strike had been enjoined and that picketing of the premises of the said Greenwood Cafe had been enjoined and did further read to the said striking employees and members of said Local Union the full interlocutory writ of injunction issued and served upon the said Carl Hacker, and did so advise the said striking employees and members of said Local Union that he was reading the same to said employees and Union members to carry out and perform the order and decree of the Court with respect to the injunction of said picketing and the mandatory injunction requiring the calling off of said strike. Whereupon by spontaneous acclamation, when the said Carl Hacker got to that part of said decree ordering the calling off of said strike, all of said striking employees and Union members declared that they would not return to work at the said Greenwood Cafe. Whereupon the said Carl Hacker did state to said employees and Union members that he was entirely without power to compel them to go back to work but that he was in reading the injunction writ complying with the order of the Court. Respondent, George Hardwick, had no authority to call said strike and likewise had no authority to cancel, annul or call off said strike. The said George Hardwick was not an employee of the Greenwood Cafe and had no authority as a member of the Culinary Workers Union Local No. 454 to either call a strike or to call off a strike.

"6. For answer to paragraphs 7 and 8 of said bill, petition or affidavit, said respondents separately and severally deny the averments contained in said paragraphs 7 and 8 of said bill, petition or affidavit. Said respondents are advised that certain persons who are said to be members of Local Unions, which are affiliated with the American Federation of Labor, and other persons who are affiliated with other local unions or with no unions at all did appear in front of said cafe and wear signs upon or about their bodies. Said respondents deny that they aided, abetted, or did any other act in any way connected with or having to do with the wearing of said signs or in the commission of any of the acts alleged to have been committed by any person or persons as alleged in paragraph 7 of said bill, petition or affidavit. Said respondents separately and severally specifically deny that any of said persons were servants, agents or employees of the Hotel & Restaurant Employees International Alliance and Bartenders International League of America or said Culinary Workers Union Local 454 or said Carl Hacker or said George Hardwick, but said respondents do aver that any act complained of in said paragraph 7 was not committed by any agent, servant or employee of said International Union or said Local Union or the said Carl Hacker or the said George Hardwick. * * *

The original answer of Hacker and Hardwick to the original petition was adopted in their answer to the petition as amended and subsequently filed. The individuals other than Hacker and Hardwick named in the substituted petition objected to the filing of the petition on numerous and sundry grounds, among others, on the ground that they were not parties respondent to the original bill. Said individuals named as contemners other than Hacker and Hardwick, in the 8th paragraph of the answer allege that, "These parties deny each and all of the averments of paragraph 8 of the bill, and state that they are not and never have been agents, servants, or employees of the respondents named in this paragraph, and they allege that they are being wrongfully held in this proceeding under a wickedly false allegation that they are agents, servants, or employees of said respondents, for the purpose of bringing them within the terms of said injunction." They do not deny that they are members of the unincorporated labor organizations and associations named in the injunction proceedings.

Said respondents offered no evidence but the case was submitted on the evidence given ore tenus in the presence of the court adduced by the petitioners in the contempt proceeding.

The trial court embodied in the decree holding the petitioners guilty of contempt, the following "finding of fact":

"The evidence is clear and convincing and the Court finds that Mr. Hacker and Mr. Hardwick have not called off the strike as they were commanded to do. It is likewise clear and convincing to the effect that they made no effort to do so. They are, therefore, in contempt of Court for failing to comply with the mandatory feature of the order of this Court issued on September 6, 1946, and September 27, 1946.

"The evidence is likewise clear and convincing and the Court finds that after the decrees of September 6, 1946 and September 27, 1946, were made and entered prohibiting picketing, the striking employees of the Greenwood Cafe who were members of the Culinary Workers Union Local #454, with full knowledge of the injunction and under the direction of Hacker and Hardwick, continued to remain in the vicinity of the Greenwood Cafe, but without placards. This continued until October 12, 1946, when these employee-pickets were supplanted by a large number of persons not parties to the writ of injunction who picketed the Cafe on that date under the direction of Carl Hacker and George Hardwick wearing placards reading 'This House Does Not Employ Union Labor.' Eleven of those individuals were arrested and brought before the ourt. Inasmuch as they have not seen fit to take the stand in this case, and no evidence has been introduced on the point, one way or the other, this Court is not informed except by a statement made in argument as to whether or not they were members of any labor organization at that time. Mr. Phillips, leading counsel for the defendants on trial, other than the defendants Hacker and Hardwick, stated in his argument in substance that 'these defendants as trade unionists believed they had a right to picket on this occasion.' Other parties who picketed on October 12th, 1946, have not been identified or have not been proceeded against.

"The Court is thoroughly satisfied and finds that all persons who participated in the picketing on October 12, 1946, did so at the instance of Carl Hacker and George Hardwick and that each of the persons participating in said picketing with full knowledge of the aforesaid injunction, conspired with Hacker and Hardwick and with each other to violate the prohibitory feature of the orders of September 6, 1946, and September 27, 1946.

"The Court is also thoroughly satisfied and finds that some or all of the conspirators, violated the prohibitory feature of said injunction by walking back and forth in front of the main entrance to Greenwood Cafe, practically all day during business hours on October 12, 1946, wearing placards reading 'This House Does Not Employ Union Labor,' that although Carl Hacker and George Hardwick did not actually wear the placards, they were present when the other defendants wore placards and aided and encouraged those who wore placards to picket on said occasion in violation of said injunction. As a result, the petitioners have sustained substantial financial loss. They suffered a loss of revenue and were caused to employ counsel and incur the liability of a reasonable attorney's fee, and were caused to leave their business and attend Court for practically three weeks as a result of the disobedience of the injunctions. In taking these matters into consideration the Court has excluded any injury to good will as that element was taken into consideration in fixing the amount of damages in the main case.

"The Court is of the opinion that coercive measures should be ordered and that such measures should be sufficient to cause Carl Hacker and George Hardwick to call off the strike and obey the mandatory feature of the decree of September 27, 1946, and that a monied decree in the nature of a fine, payable to the Petitioners, sufficient in amount to make the petitioners whole and to cause the defendants to obey the prohibitory features of the decree of September 27, 1946, above referred to, should be imposed upon all the defendants and *the* (that) they should be required to pay the costs of this proceeding.

"The evidence in this case is also clear and convincing to the effect that the picketing on October 12, 1946, was accompanied by acts of violence for which the defendants are responsible but the Court does not deem it appropriate to award any punitive dam-

ages or fix any punishment in this proceeding for said acts of violence."

The decree awards the parties complainant $4,598.18 for loss occasioned by the wrongful acts of the defendants in violating the injunction embodied in the final decree of the court and required said contemners to pay the cost of the proceeding and there was evidence going to support the award embodied in the decree.

Under the rules previously stated, it was permissible for the court to allow the parties complainant to amend or file said substituted pleading and this ruling was free from error. 43 C.J.S., Injunctions, § 272; Wall v. Superior Court of Yavapai County, 53 Ariz. 344, 89 P.2d 624; Lademan v. Lamb.Construction Co., Mo.App., 297 S.W. 187; 17 C.J.S., Contempt, § 73.

We are of opinion that the pleadings, the basis for the contempt, were not subject to the objection made thereto and that there was no uncertainty in the scope of the injunction.

"Persons who were parties to the bill, but not named in the injunction order because they were not shown to have participated in the acts sought to be enjoined, are nevertheless bound with notice of the order granting the injunction and punishable for a disobedience of its provisions; * * *." 43 C.J.S., Injunctions, § 263; In re Rice et al., C.C., 181 F. 217.

Officers, agents and members of a voluntary unincorporated association authorized to be sued as an entity must take notice of the proceedings and are subject to punishment for contempt for violating an injunction issued against such association. 43 C.J.S., Injunctions, § 263; American Steel & Wire Co. v. Wire Drawers' & Die Makers' Unions Nos. 1 and 3, C.C. Ohio, 90 F. 598; Lake Erie & W. R. Co. v. Bailey, C.C. Ind., 61 F. 494, and other cases.

The failure of the individual defendants substituted for "John Doe and Richard Roe" to disavow their membership in the unincorporated association made parties to the injunction proceeding and their asserted right to picket evidenced by their conduct and the statement of their counsel on the trial and in argument was sufficient to warrant the conclusion stated in the de-

cree that they had notice of the existence of the injunction and its scope and purpose. Falloon v. Superior Court of Los Angeles County, 79 Cal.App. 149, 248 P. 1057.

The contempt in this case is based on violation and disregard of a mandate of the final decree of a court of competent jurisdiction after full hearing and it is well settled that a judgment is a judicial act of a court by which it accomplishes the purpose of its creation. It is a judicial declaration by which the issues are settled and the rights and liabilities of the parties are fixed as to the matter submitted for decision. In other words, a judgment is the end of the law. A judgment is the sentence of the law on the ultimate facts admitted by the pleadings and established by proof. It is not a resolve or decree of the court but is the sentence of the law pronounced by the court on the action or question before it, establishing the legal rights of the litigants. Such judgment constitutes a vested right of property in favor of the prevailing party and brings such right within the protection of the law of the land. 49 C.J.S., Judgments, § 2; Bell v. Otts, 101 Ala. 186, 13 So. 43, 46 Am.St. Rep. 117; Speed v. Cocke, 57 Ala. 209.

The sustention of the integrity of judgments and decrees of the courts is the last outpost of liberty under law. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (See opinion of Justice Frankfurter).

The labor controversy out of which this litigation arose was not provoked by the Greenwoods. They were not engaged in any unlawful act. They were merely engaged in operating their business which they had a right to do under the constitution and laws of this state and of the United States. The controversy was promoted by the petitioners in behalf of labor. This was not an unlawful act, so long as it was peaceful. Nor was the request of the Greenwoods for reasonable time to consider the legal effect of the contract presented for them to sign and to procure legal advice thereon unlawful or unreasonable as a matter of law.

The decree of the circuit court, after full hearing, determined this as right; holding that the acts of the defendants in the in-

junction proceeding went beyond their lawful rights and were unlawful, and restrained such petitioners from interfering with the lawful operation by the complainants, owners of the cafe, a business in which they had invested their effort and capital. And if we are to have a government of law, the decree of that court which established their right must be observed and obeyed, so long as its integrity is not successfully impeached. There is nothing in the decisions of this court or of any court that we have been able to examine that hold to the contrary. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

Evidence was offered on the trial of the contempt proceeding tending to show unlawful concert and action directed against Greenwood Cafe and the owners thereof after the decree was entered, and to invoke the economic forces of organized labor not only of the unions involved in the strike, but also generally in the territory where a rule of conduct was recognized and observed that one who crossed the "picket line" was an undesirable, dishonest person, with the effect that supplies for the operation of the business of the cafe were in a large measure cut off and made more difficult to obtain, acts and conditions designedly brought about by the alleged contemners to coerce the Greenwoods in surrendering their rights to resist unionization of their business and the establishment of a closed shop, not only violated the mandate of the decree but also violated the letter and spirit of § 386, Title 26, Code of 1940, which provides:

"It shall be unlawful for any person, however near to or distant from any place of employment in this state, to hinder, interfere with, or prevent, by the use within this state of threats, intimidation, force, *coercion* or sabotage, the obtaining, use, or disposition of materials, equipment or service by the employer or operator of such place of employment." [Italics supplied.] See Hardie-Tynes Mfg. Co. v. Cruse, 189 Ala. 66, 66 So. 657.

There was evidence tending to establish the elements of damages proximately flowing from the wrongful acts of the contemners but there is nothing on the face of the record to show what elements entered into the amount of the fine fixed. Under the limited review laid down in the authorities heretofore stated, we are not in position to determine that what entered into the amount of the fine is an error apparent on the record. The decree in so far as it holds the petitioners guilty of contempt and assesses a fine against them and taxes them with the costs should be affirmed.

It appears, however, that imprisonment of the contemners for a fixed period of time is excessive. The imprisonment should be limited and continue until the contemners comply with the mandate of the decree. "Without this power the authority of the court to compel respect of its judgments in cases of this character would be without force and effect." 43 C.J.S., Injunctions, § 276.

As observed in a most recent case by the Supreme Court of the United States: "And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.' In re Nevitt, 8 Cir., 117 F. 448, 461. Fine and imprisonment are then employed not to vindicate the public interest but as coercive sanctions to compel the contemnor to do what the law made it his duty to do. * * *" The Penfield Co. of California et al. v. Securities & Exchange Commission, 1947, 330 U.S. 585, 67 S.Ct. 918, 921. The sentence for a definite period of time is quashed. The cause is remanded to the circuit court in order that the petitioners may appear and purge themselves of the contempt.

The foregoing opinion deals with the questions presented on the record argued by counsel on submission and taken under consideration by the court. The other justices have not voted on the questions which have been considered and stated, though some of the members indicate some of the propositions stated are sound and all the justices agree that certiorari is an appropriate remedy to review the decree holding the petitioners guilty of contempt and that the motion to dismiss the proceedings was properly denied.

The majority, as the opinion which follows shows, dispose of the case on a question not presented on this record, predicat-

ed on an incident occurring since the submission of this case on motion and merits, not suggested by the parties and on which they have not been given an opportunity to be heard. Nevertheless, by the decree entered, the Greenwoods, complainants in the injunction case, have been denied equal protection of the law and due process of law under the constitution and laws of this state and of the United States, and the judgment here concludes them from being made whole for the injury done them. Constitution of 1901, § 13.

The decisions cited in the majority opinion, I take it, were rendered on records wherein the court had unlimited right to review, not a limited right as here. The majority opinion overlooks the fact that the rights which petitioners violated and transgressed did not rest on the mandate of the decree, but arise out of the property rights in the complainants' business and the incidents of ownership, for the protection of which they had invoked the court's jurisdiction and have given bond indemnifying the defendants from loss or injury.

Complainants were entitled to the protection of the mandate of the decree until it was authoritatively vacated. See United States of America v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 703, 91 L.Ed. 884, wherein Mr. Justice Frankfurter makes a clear statement of the principles underlying "a government of laws and not of men."

From this holding and judgment I respectfully dissent. My conclusion as to what the proper judgment should be is stated above.

PER CURIAM.

The contempt proceedings here involved were considered by all parties as constituting a civil contempt and expressly so stated by the trial judge in the decree rendered.

■ This cause is collateral to the original injunctive proceeding decided by this court in the cause styled Hotel & Restaurant Employees International Alliance et al. v. Greenwood et al., 249 Ala. 265, 30 So. 2d 696.

■ Certiorari is the appropriate remedy for review. Ex parte Dickens, 162 Ala. 272, 50 So. 218.

■ This court, of course, takes judicial notice of its own records. In Hotel & Restaurant Employees International Alliance et al. v. Arthur Greenwood et al., supra, this court decided the injunctive suit was not sustained and that this injunction was improperly issued. The judgment here entered was to the effect the bill should be dismissed and the injunction dissolved.

■ We think this civil contempt proceeding must fall with the decision in the original suit.

■ It is the generally accepted rule that a defendant in an injunction proceeding may not be held liable as for a civil contempt for the violation of the terms of the injunction which is thereafter reviewed, dissolved, or otherwise terminated. A number of authorities are to be found cited in the note to Securities and Exchange Commission v. Okin, 2 Cir., 137 F.2d 862, 148 A.L.R. 1019, particularly those found on page 1032 of said 148 A.L.R. Among those cited are Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 and Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, both of which are approvingly cited in the more recent case from the United States Supreme Court of The United States of America v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 696, 91 L.Ed. 884. Therein the court observed:

"It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued. Worden v. Searls, supra, 121 U.S. [14] at pages 25, 26, 7 S.Ct. [814] at page 820, 30 L.Ed. 853 * * *."

We might note further excerpts from that opinion which are here pertinent. But the question of distinction between a civil and criminal contempt is therein fully discussed. But we forego further quotation from that authority or citation of other cases in point. They are found cited in this

authority and in the note to 148 A.L.R. supra.

We consider the question well settled by the authorities and as we view the matter as a recognized and agreed civil contempt, the result here must be a reversal of the judgment rendered and a dismissal of the petition filed in the cause. It will be so ordered.

As the authorities indicate, the ruling here in regard to the civil contempt does not stand in the way of any proceeding for criminal contempt and is without prejudice in regard thereto.

Reversed and rendered.

All the Justices concur except BROWN, J., who dissents.