334 So.2d 892 (1976)
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 136, et al.
v.
DAVIS CONSTRUCTORS AND ENGINEERS, INC. and Kimberly-Clark Corporation.
SC 1500.
Supreme Court of Alabama.
May 14, 1976.
As Corrected on Denial of Rehearing July 9, 1976.
*893 Cooper, Mitch & Crawford and John C. Falkenberry, Corretti, Newsom & Rogers, Birmingham, for appellants.
Dixon, Wooten, Boyett & McCrary, and B. Clark Carpenter, Talladega, and Thompson, Ogletree & Deakins and Gardner G. Courson, Atlanta, Ga., for appellee Davis Constructors and Engineers, Inc.
C. V. Stelzenmuller, Birmingham, for appellee, Kimberly-Clark Corp.
FAULKNER, Justice.
The Brotherhood appeals from an order and judgment of the Circuit Court of Talladega County, granting a preliminary injunction against the Union, its officers, and agents, enjoining mass picketing and violence in a labor dispute.
*894 Paragraph 6 of the injunction is null and void. We reverse and remand.
Davis Constructors and Engineers, Inc. and Kimberly-Clark Corporation had entered into a contract to expand production facilities and install pollution control equipment at a plant owned by Kimberly-Clark in Childersburg, Alabama. Prior to August 30, 1975, members of the Unions had peacefully protested Davis' employment of non-union members on the job. On August 30 a large number of Union members massed at the entrance to the construction site. There they made threats, used abusive language and committed assaults and other acts of violence against employees of Davis and Kimberly-Clark. The same day, a Circuit Judge, specially assigned to hear the case, issued an ex parte temporary restraining order based on the plaintiffs' verified complaint and supporting affidavits. At the scheduled hearing on September 2, after all parties had been given opportunity to present evidence, the court granted a preliminary injunction. In general terms, the order enjoined mass picketing, the blocking of entrances, threats, and violence.
The Unions have appealed from Paragraph 6 of the preliminary injunction, providing:
"The Sheriff or any other duly authorized police officer who witnesses a violation of this order by any person shall forthwith arrest such person and bring him before me."
The Union contends that this paragraph constitutes an improper delegation of the court's contempt power, with a concomitant "chill" on their First Amendment rights; that due process requires that persons charged with constructive contempt be given notice of the charges against them and be afforded an adequate opportunity to defend against such charges before punishment can be imposed.
Davis and Kimberly-Clark argue that this case is not ripe for judicial determination, as no Union members have been arrested for contempt, contending that once arrests have been made, the proper method for review will be by writ of habeas corpus, if incarcerated; by writ of certiorari, if not. They allege the Union is attempting to avoid in advance the Alabama rule, that there is no right to appeal a contempt conviction.
Furthermore, Davis and Kimberly-Clark assert that criminal contempt is a public offense, and it is constitutionally permissible for sheriffs or police officers to make warrantless arrests for violations of the injunction committed in their presence. Indeed, they argue, it is necessary for warrantless arrests to be made, to prevent the repetition of violence and mass picketing, and to prevent would-be contemnors from leaving the jurisdiction before show cause orders could be served on them. Finally, they say any violation of the injunction committed in the presence of the sheriff or other police officers would be direct criminal contempt.
We are of the opinion that the Union has standing to take this appeal, and the issues presented are ripe for judicial resolution. The Union is not attempting to appeal not-yet-entered convictions for contempt; they have properly appealed from a portion of a preliminary injunction, pursuant to Rule 4(a), Alabama Rules of Appellate Procedure.
We agree with Davis and Kimberly-Clark that law enforcement officers may make warrantless arrests for public offenses committed in their presence. This is specifically provided by Title 15, § 154, of the Alabama Code, 1958, which reads, in part, as follows:
"An officer may also arrest any person, without warrant, on any day and at any time, for any public offense commited, *895 or a breach of the peace threatened in his presence . . ."
This statute is perfectly in accord with the lastest pronouncement of the Supreme Court on warrantless arrest, U.S. v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, 44 U.S.L.W. 4112 (1976).
The issue then becomes whether or not a violation of the injunction is a public offense, or a direct criminal contempt.
We think it is neither. Davis and Kimberly-Clark argue that a public offense is "an act or omission forbidden by law, and punishable as provided in this Code." Title 1, § 5; that courts are given the power to punish for contempt by Title 13, § 2, and the possible sanctions for criminal contempt are set out in Title 13, §§ 9, 126(4), and 143. Since contempt is forbidden by law and is punishable, it is a public offense, reason Davis and Kimberly-Clark. We do not agree. Contempt is, and always been, treated as sui generis in Alabama. "A proceeding for contempt is sui generis, being neither a "civil action" nor a "criminal prosecution" within the ordinary meaning of those terms."
Ex Parte Hacker, 250 Ala. 64, 70, 33 So.2d 324, 330 (1947). Criminal contempt is not a public offense; it is not a criminal case has under the Alabama Constitution or the statutes. Ex Parte Evett, 264 Ala. 675, 89 So.2d 88 (1956).
Violation of an injunction is not direct criminal contempt. Title 13, § 2 enumerates seven broad classes of conduct which are punishable summarily as direct criminal contempt:

"Powers of court to inflict summary punishment.The powers of the several courts in this state to issue attachments and inflict summary punishment for contempts, does not extend to any other cases than:
"Disrespectful, contemptuous, or insolvent [sic] behavior in court, tending in anywise to diminish or impair the respect due to judicial tribunals, or to interrupt the due course of trial.
"A breach of the peace, boisterous conduct, violent disturbance, or any other act calculated to disturb or obstruct the administration of justice, committed in the presence of the court, or so near thereto as to have that effect.
"The misbehavior of any officer of the court, in his official transactions, or the disobedience or resistance of any officer of the court, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command thereof.
"Deceit, or the abuse of the process of the proceedings of the court, by any person or party, or any unlawful interference with the process or proceedings of the court.
"Refusing to be sworn, or to answer, either in the court or before the grand jury, any lawful question as a witness or garnishee.
"When summoned as a juror in a court, improperly conversing with a party to an action, to be tried at such court, or with any other person in relation to the merits of such action, or receiving a communication from a party, or other person, in respect to it, without immediately disclosing the same to the court.
"Conversing with a juror, knowing him to be such, in relation to the merits of any action which he is engaged in the trial of; or supplying any juror with refreshments of any kind, except water, during the time he is engaged in the trial of any cause, without leave of the court."
This court has not clearly drawn the outer limits of the phrase, "committed in the presence of the court, or so near thereto as to have that effect [of disturbing or obstructing the administration of justice]." In Ex Parte Morris, 252 Ala. *896 551, 42 So.2d 17 (1949), however, "presence" was extended to every part of the place set apart for the court's use. How far "presence" extends depends on the individual facts of the case. We cannot say here that a violation of a preliminary injunction occurring at the plant site would be in the "presence of the court, or so near thereto" as to disturb or obstruct the administration of justice. As this court stated in Ex Parte Seymore, 264 Ala. 689, 89 So.2d 83 (1956), a proceeding on a violation of a temporary restraining order forbidding mass picketing, threats, and coercion in a labor dispute involves constructive criminal contempt.
Where there is doubt as to the character of the alleged contempt, that is, whether it is direct, or constructive, the doubt should be resolved in favor of its being constructive, expecially where the contempt charged is a criminal contempt. Ex Parte Hennies, 33 Ala.App. 377, 34 So.2d 22 (1948).
That being the case, the federal constitution requires that for indirect contempt, not committed in open court, the accused be afforded due process of law; that is, notice of the charge and an opportunity to be heard before the court. Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). In In Re Tarpley, 293 Ala. 137, 300 So.2d 409 (1974), this court said that the question had also been spoken to in Alabama, citing with approval the holdings of Hunter v. State, 251 Ala. 11, 37 So.2d 276 (1948) and Ex Parte Bankhead, 200 Ala. 102, 75 So. 478 (1917) that according to both the federal and state constitutions, the accused must be given notice of the nature and character of the charges, and be given an opportunity to answer.
Is due process satisfied if alleged contemnors are advised of the charges against them after they have been arrested? No. Alabama cases have long required that actions for indirect contempt be initiated by a rule nisi or an arrest warrant. In Robertson v. State, 20 Ala.App. 514, 521, 104 So. 561, 567 (1924) the court said:
"It has been held that a proceeding to punish for other than direct contempt is a distinct and independent proceeding, as much so as a new suit, and necessitates the giving of notice of all proceedings."
In Hunter, the court found that constructive contempt proceedings were sometimes begun by issuing a warrant of arrest, and occasionally by issuing a citation or rule nisi to the accused ordering him to appear and answer the charge. The court went on to say, "This does not mean that a written accusation is not essential." Id. 251 Ala. at 14, 37 So.2d at 278. Tarpley reaffirmed this. The contrapositive of this proposition is the law in Alabama; a written accusation is essential to initiate an indirect contempt proceeding.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, ALMON and EMBRY, JJ, concur.

ON REHEARING
FAULKNER, Justice.
Opinion corrected.
APPLICATION FOR REHEARING OVERRULED.
HEFLIN, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.