300 So.2d 401

In re Kathe E. TAPLEY, Plaintiff,

v.

LIBERTY SUPER MARKETS OF BIRM-
INGHAM, Alabama, Defendant.

Ex parte William T. TARPLEY,
Petitioner.

6 Div. 602.

Court of Criminal Appeals of Alabama.

Jan. 15, 1974.

Rehearing Denied March 5, 1974.

Douglas, Arant, Brittin T. Coleman, Birmingham, for petitioner.

Russell T. McDonald, Jr. and Michael W. McCormick, Birmingham, for respondent.

HARRIS, Judge.

Petitioner was adjudged guilty of contempt of court for failing to appear as a witness for the plaintiff in the above styled civil action in the Circuit Court of Jefferson County and was sentenced to four (4) days confinement in the Jefferson County Jail. We granted certiorari to review the findings and judgment of the trial court.

This is a first impression case in this State as it deals with an "on call" civil subpoena. It is a case of extreme importance to the trial courts especially in the metropolitan areas of the State, the trial bar, local bar associations and the medical association or local medical societies.

The factual background of this case is necessary to an understanding of our decision.

On June 28, 1972, Kathe E. Tapley filed a complaint for damages against Liberty Super Markets of Birmingham in the Circuit Court for the Tenth Judicial Circuit of Alabama. On May 21, 1973, petitioner was served with a subpoena issued by the plaintiff. The subpoena directed the sheriff to summon petitioner to appear before the Civil Division of that court on June 11, 1973, at 8:45 A.M. and continue from day to day thereafter until discharged. The subpoena contained the following: "William T. Tarpley, M.A. (On Call), 1023 South 20th Street, Birmingham, Alabama."

Petitioner is an orthopedic surgeon actively engaged in the practice of medicine in Birmingham. For a number of years an agreement has been in effect between the Birmingham Bar Association and the Jefferson County Medical Society which provides that the attorney for a party to a civil action who causes a doctor to be subpoenaed will communicate with the doctor in advance of trial and keep the doctor advised as to when the case will be tried. This is usually done by the attorney's secretary calling the doctor's secretary. Sometimes there is a direct call from the attorney to the doctor. The doctor then makes his arrangements to appear in court. The underlying purpose of this agreement is to avoid having a doctor wait in the witness room at the courthouse when he could be treating patients in his office or in the hospitals. This agreement has the sanction of the circuit judges in Birmingham and in other circuits throughout the State where

there are similar agreements between local bars and medical societies. All trial courts and the trial bar know that civil cases are often settled after a jury is struck and sometimes after the case has been tried a half a day or even several days and a doctor has not been called to come to court. Cases have been settled while the doctor was enroute to the courthouse in response to a call.

The case of Tapley v. Liberty Super Markets was called for trial on June 12, 1973, in Judge Ingram Beasley's courtroom and the trial got underway on the morning of June 13, 1973. On June 12 Mr. Clay Alspaugh, one of the attorneys for the plaintiff, telephoned petitioner with regard to him testifying on June 13 at 9:00 A.M. Petitioner informed the attorney that he had surgery scheduled that morning and could not cancel it. The attorney then asked petitioner if he could come at 1:30 P.M. on June 13 and petitioner said he would be present in court to testify at 1:30 P.M. unless something unforeseen occurred. The attorney told petitioner that if he finished surgery earlier than expected on June 13, 1973, to call him and possibly petitioner could be put on the stand before 1:00 P.M., but surgery was not completed until around 12:30 P.M. and petitioner did not call the plaintiff's attorney. Petitioner's partners had been out of town for two weeks and he had forty-six (46) patients in the hospital to see. Early in the afternoon of June 13, petitioner was at Shelby Memorial Hospital in Alabaster, Alabama. When he finished at Shelby Memorial Hospital, he had to go to Brookwood Hospital in Birmingham where he arrived at about 4:30 P.M. He got home on the afternoon of June 13, 1973, at about 5:45 P.M.

At 3:00 P.M. on June 13, Judge Beasley adjourned court because of the absence of petitioner. In an effort to assure petitioner's presence in court at 9:00 A.M., June 14, 1973, Judge Beasley issued an attachment for him. This attachment was delivered to the office of the Sheriff of Jefferson County by one of Judge Beasley's clerks. At 9:00 A.M. on June 14, the petitioner was not in court and in checking on it, Judge Beasley found that the attachment had never been served on petitioner. Thereupon a mistrial was declared and the Sheriff was ordered to "appear before this court at 9:00 A.M. on Friday, June 15, 1973, and bring with him all clerks and deputies who in any way processed or handled or attempted to process or handle or who had anything to do with the receipt, execution or handling of the writ of attachment issued to him pursuant to the above order on June 13, 1973."

The civil subpoena clerk in the Sheriff's Department received the writ of attachment about 3:10 P.M. on June 13 and put it on the desk of a Lt. Fordum who was in command of the 4:00 P.M. to midnight shift. Somehow the writ of attachment got misplaced by a deputy and did not reach the serving deputy until around 9 or 10:00 P.M. and because of the lateness of the hour, it was decided not to serve it on petitioner at his home. These facts were made known to Judge Beasley after he had declared a mistrial at 9:00 A.M. on June 14, 1973. Judge Beasley then ordered the sheriff to arrest petitioner and put him under a fifty-dollar bond conditioned to appear before him at 9:00 A.M. on June 15, 1973. When this bond was presented to petitioner by a deputy sheriff, petitioner requested permission to make a copy of it and the deputy told him that he had an attachment for him and he could also make a copy of it. This was petitioner's first knowledge that an attachment had been issued for his appearance in court on June 14, 1973, at 9:00 A.M. The fifty-dollar-appearance bond was to answer a criminal prosecution for the offense of *defaulting witness* (Judge Beasley's Court).

The order calling for the issuance of the attachment is in words and figures as follows:

"6–13–73 Dr. William T. Tarpley having been subpoenaed as a witness in this case

and failing or refusing to appear as directed the Clerk of this Court is hereby directed to issue a writ of attachment directing the Sheriff of Jefferson County to attach the person of the said Dr. William T. Tarpley and produce him in person before this Court on June 14, 1973 at 9:00 o'clock A.M. Ingram Beasley, Judge."

The clerk handling civil subpoenas in the clerk's office in issuing the attachment omitted the words and figures: "at 9:00 o'clock A.M." This left the word "(INSTANTER)" on the printed form to denote the time element. At the hearing in this case, the trial court took note of this omission but went on to say that "Instanter means right now, instantly. That's what the word means, instantly. It's a matter of cooperation between the court and the sheriff's department. I don't have to keep putting everybody in jail. I attach them because I want to impress upon them that I need them and want them in court at that time. If he had been served, we would have tried this case and we would have had a verdict. It would have been over and done with. As it is, of course we're going to have to try it over again, and I think if the doctor had been called on the telephone, he would have been here. People in that position are not trying to evade law when they know what they're doing."

After petitioner had made his sworn explanation to the court, and after the testimony of three of the sheriff's deputies, and after an unsworn statement of the sheriff extolling the virtues of his office as follows:

"The policy and procedure, Judge Beasley, that I have instigated in the sheriff's office over the past ten years is that each paper is treated individually and with importance, and that we do not sluff some aside that we might think are important or others that we might think aren't, and I think our performance is such that we would like to say we had one hundred percent service, and those that we do not include in the effort of striving for that goal we show not found, or some other reason why not served. I think our office is to be criticized in this matter, because we did receive the paper as I am advised by Chief Belcher. On attachments, we normally get a flier stapled or gem clipped to the order denoting the urgency of the matter, but I think like the court does that attachments carry the urgency with the word itself, and yet even at the late hour of ten or later we very well might or should have awakened the doctor, but our policy is to get these papers out there, and the men here have a full heavy load of papers, and in this instance we're somewhat on the mercy of the court for not handling it expeditious, as it appears the court wishes for the sake of the case at hand."

Judge Beasley determined that there were extenuating circumstances with reference to the execution of the Writ of Attachment and that he was not going to take any kind of action against the sheriff's department.

As to petitioner, Judge Beasley said: "There's not much extenuating circumstances as far as Dr. Tarpley is concerned, and Dr. Tarpley, I feel it is my duty to hold you in contempt as a defaulting witness, and sentence you to four days in jail. I have the power to make it five, and I have the power to fine you up to fifty dollars * * * *".

Upon being advised that petitioner had filed a petiton in this court for a writ of certiorari, Judge Beasley made an order staying his decree pending a final determination of said petition.

Petitioner strenuously insists that he is not guilty of any contempt for two reasons: (1) an "on call" subpoena is in essence no subpoena in law because the *commandment to appear in court* depends on too many variables and the *commandment per se* is thus neutralized, and (2) if he is guilty of

contempt at all it is *constructive* contempt and not *direct* contempt committed in the *presence or face of the court* authorizing summary punishment. An "on call" subpoena in and of itself denotes flexibility in the *commandment* to appear.

We have been furnished with excellent briefs from all parties involved in this case. However, we have been cited to no case, nor has our research led us to one, which has dealt with an "on call" subpoena in contempt of court cases. This dearth of authority is due, no doubt, to the fact that this method of summoning witnesses to court is not a wide spread practice.

Contempt has been with us a long time and came from the Common Law of England. Summary punishment for contempt does not extend to any other cases than those set forth in Title 13, Section 2, Code of Alabama 1940.

Disobedience of process of the court is categorized as constructive or indirect contempt and not direct contempt in Dangel, Contempt, 7, Section 14:

"A *direct contempt* consists of disorderly or insolent behavior committed during the session of the court, and *in its immediate view and presence,* such as the unlawful and willful refusal of any person to be sworn as a witness, or the refusal to answer any legal or proper question, or the giving of false testimony, or any breach of the peace, noise or disturbance so near to the court as to interrupt its proceedings. An *indirect contempt,* sometimes called a 'constructive contempt', may consist of willful disobedience of any process or order lawfully issued or made by the court and resistance willfully offered by any person to the execution of a lawful order or process of the court." (Emphasis in original).

Both State and Federal courts have dealt with this subject extensively and have applied constitutional standards in approaching contempt proceedings. The application of due process and the Sixth Amendment to contempt proceedings were first discussed in Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. This opinion guarantees a person alleged to be in contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either in defense or explanation.

In the cases of Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; and Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 459, 27 L.Ed.2d 532, the Supreme Court reaffirmed the above rule recognizing a distinguishable category of circumstances where the above procedures are not mandatory. The excepted instances include charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public. In *Oliver,* supra, the court specifically stated if some of the essential elements of the offense are not personally observed by the judge and he must depend upon statements made by others to supply his knowledge as to such essential elements, due process requires reasonable prior notice and the opportunity to be heard in person and with his witnesses at a fair hearing.

 At common law and under statutes courts may summarily punish for direct contempts. In such cases the personal knowledge of the court in whose presence the act was committed takes the place of evidence. If the act is committed outside the presence of the court the procedure requires that the contemnor be notified of the contempt charge and the nature thereof and that he be given an opportunity to be heard thereon before he may be punished therefor. As succinctly stated in Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240:

"Summary procedure, to use the words of Chief Justice Taft, was designed to fill 'the need for immediate penal vindication of the dignity of the court.' * * * [T]he limits of the power to punish for contempt are '[t]he least possible power adequate to the end proposed.' In the instant case, the dignity of the court was not being affronted: no disturbance had to be quelled; no insolent tactics had to be stopped."

The courts of Alabama have had many occasions to treat this sometimes troublesome problem. In Ex parte Hennies, 33 Ala.App. 377, 34 So.2d 22, Judge Harwood (now Justice Harwood) observed:

"A criminal contempt may be either direct or constructive. In many situations the line of demarcation between direct and constructive contempt is tenuous. A beclouding over-refinement may be found in some of the cases.

"Basically, a direct contempt is one committed within the presence of the court while in session, or so near to the court as to interrupt its proceedings. Rapalje on Contempts, Section 22.

"Whenever there is doubt as to the character of the alleged contempt, that is, whether it is direct, or constructive, the doubt should be resolved in favor of it being constructive, especially where the contempt charged is a criminal contempt. Ex parte Redmond, 159 Miss. 449, 132 So. 328.

"We are clear to the conclusion that under the facts of this case this petitioner's conduct did not constitute a direct contempt. It results therefore that the contempt, if any, must be deemed constructive.

"Assuming, but not deciding, that a constructive contempt has been committed by this petitioner, has the sentence been imposed on him by due process of law? We think not. In the opinion on the rehearing in the case of Ex parte Bank-

head, 200 Ala. 102, 75 So. 478, Chief Justice Anderson wrote:

"'We laid down the rule in the foregoing opinion that, in order to punish for a constructive contempt, the offending party should have notice of the nature of the charge against him and be given an opportunity to answer and defend himself, and that this was generally done by a rule to show cause.'

"The above we think decisive of this case in which there is a complete absence of fundamental procedures prior to the imposition of the sentence, and to which petitioner was entitled."

In Hunter v. State, 251 Ala. 11, 37 So.2d 276, the Supreme Court laid down the law as to the procedure that must be followed in a constructive contempt proceeding. There the court said:

"There is no statutory or constitutional provision directing the procedure by which a constructive criminal contempt shall be begun.

"But since it involves the power of the court to find and imprison and sometimes to arrest the accused, the requirements of the Constitution affecting those incidents have application.

"Sometimes a constructive contempt is begun by issuing a warrant of arrest requiring the accused to be held and be heard on the charge. Sometimes it is begun by issuing a citation or rule to him to appear and answer the charge.

"If it is begun by issuing a warrant for his arrest, the requirements of § 5 of the Constitution must be observed. Section 5 provides that no warrant shall issue to seize any person without probable cause supported by oath or affirmation. So that if a warrant is issued for his arrest prior to his trial on the charge, it should be supported by such oath or affirmation as affords probable cause for doing so.

"But when it is begun by a citation to appear and make defense, it is suffi-

ciently begun and the proceedings are valid if due process is satisfied in § 6 and the 14th Amendment to the Federal Constitution.

"Due process requires that the accused shall be advised of the charges, and have a reasonable opportunity to meet them. This includes the assistance of counsel, if requested, the right to call witnesses, to give testimony, relevant either to the issue of complete exculpation or extenuation of the offense and in mitigation of the penalty imposed. Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L. Ed. 767; Ex parte Bankhead, 200 Ala. 102, 75 So. 478; Dangel on Contempt 209, § 446.

"This does not mean that a written accusation is not essential. But it need not be verified except to support a warrant of arrest under § 5, supra. But the form of it is not material if it sets out the charges in such manner as to apprise him of the exact nature of it, and what he is called upon to defend."

▪ In this case no warrant was issued for the alleged contemnor's arrest supported by an affidavit denoting probable cause. No citation or rule was issued and served upon petitioner containing a specification of contempt charges so as to conform to the due process requirements of notice and an opportunity to defend. When we come to examine the judgment in this case, we must conclude that the trial court was without jurisdiction to proceed in the manner he did and that the judgment is void on its face. An attachment was issued for petitioner but never served. The court stated emphatically that if the sheriff's deputies had served the attachment, or even called petitioner on the telephone, petitioner would have been in court at 9:00 A.M. on June 14, 1973, and the case would have gone on to a conclusion and a verdict rendered.

Judge Beasley is one of the most astute and conscientious judges to grace the circuit bench. It is understandable that he was upset, disturbed and perturbed in being forced to declare a mistrial because of the absence of the plaintiff's doctor. The plaintiff was certainly entitled to have her case tried on the date it was set. Judge Beasley knew that it takes at least twelve months to get a civil case tried from the time it is filed in Jefferson County, and about six more months to get a resetting after a mistrial is declared. In his zeal in attempting to right a wrong, the judge unwittingly committed another wrong.

Petitioner appeared before Judge Beasley at 9:00 A.M. on June 15, 1973, not because of a warrant of arrest, nor in answer to the rule nisi, but to answer a "prosecution for the offense of a defaulting witness". The penalty for a defaulting witness is controlled by Title 7, Section 452, Code of Alabama 1940, which provides as follows:

"Any witness who, after being subpoenaed, fails to attend pursuant to the mandate of the subpoena and remain until his testimony is given, or he is discharged, forfeits one hundred dollars to the use of the party summoning him; and the attendance of such witness may be compelled by attachment."

The word "contempt" was never mentioned until the hearing was concluded on June 15, 1973. Petitioner was then called before Judge Beasley and summarily punished for contempt of court. In the light of Ex parte Hennies, supra, and Hunter v. State, supra, this conviction cannot stand.

There are other instances of error but in view of the conclusion we have reached it is not necessary that we treat them.

It is, therefore, ordered that the judgment of the court below holding this petitioner in contempt is reversed, and it is further ordered that the petitioner be discharged in this proceeding.

Writ granted.

Judgment below is reversed and rendered.

Writ granted. Judgment below reversed and rendered.

CATES, P. J., ALMON and TYSON, JJ., concur.

DeCARLO, J., dissents.

## ON REHEARING

 Respondent has made timely application for rehearing and attached his personal affidavit thereto for consideration by this Court. Admittedly this affidavit was not a part of the proceedings before him on June 15, 1973. He states that an affidavit was filed by one of the attorneys for the plaintiff in the civil action in which a mistrial was declared because of the absence of petitioner as a witness for the plaintiff which also was not a part of the trial proceedings and that a motion was filed in this Court to strike such affidavit on that ground. This is true. The affidavit of plaintiff's attorney was filed on June 21, 1973, six days after petitioner was adjudged in contempt of court. The motion to strike this affidavit was filed in this Court on June 28, 1973. We did not act on the motion to strike, one way or another. Since that affidavit was not before respondent at the June 15, 1973, hearing, we simply chose to lay it aside and we gave absolutely no consideration to that affidavit in our decision in this case.

For the same reason we are forced to lay aside the affidavit of respondent attached to the application for rehearing.

We adhere to our original decision in this case and overrule the application for rehearing.

Opinion extended and application for rehearing overruled.

CATES, P. J., and ALMON and TYSON, JJ., concur.

DeCARLO, J., dissents.