300 So.2d 409 (1974)
In re Ex parte William T. TARPLEY, Petitioner.
In re Kathe E. TAPLEY
v.
LIBERTY SUPER MARKETS OF BIRMINGHAM, Alabama.
Ex parte Ingram BEASLEY, Judge of the Tenth Judicial Circuit.
SC 752.
Supreme Court of Alabama.
September 12, 1974.
*410 Michael W. McCormick and David Cromwell Johnson, Birmingham, for petitioner.
Douglas Arant and Brittin T. Coleman, Birmingham, for respondent.
JONES, Justice.
The respondent, Dr. William T. Tarpley, was found guilty of contempt of court for failure to appear as a witness pursuant to an "on call" subpoena in the case of Kathe E. Tapley v. Liberty Super Markets of Birmingham, Alabama, in the Circuit Court of Jefferson County. He was sentenced to four (4) days confinement in the Jefferson County jail by the petitioner, Judge Ingram Beasley. Dr. Tarpley filed a petition for a writ of certiorari with the Court of Criminal Appeals, 53 Ala.App. 363, 300 So.2d 401, and Judge Beasley issued an order staying the sentence pending a final determination of the question. The Court of Criminal Appeals reversed the trial Court's order holding the Doctor in contempt and ordered him discharged. We granted certiorari.
This is the first case brought to us dealing with an "on call" civil subpoena, and its disposition requires us to answer the following specific questions:
1. Whether failure to appear pursuant to an "on call" subpoena is an offense which is punishable as contempt of court?
2. If so, whether such contempt is a direct or indirect contempt of court?
3. If it is an indirect contempt of court, whether the constitutional requirements of due process were meti. e., notice of the charge and an opportunity to be heard?
We hold:
1. Failure to appear as a witness pursuant to an "on call" subpoena is an offense punishable as contempt of court.
2. Contempt for failure to appear as a witness is an indirect contempt of the court and as such the accused is entitled to constitutional notice and an opportunity to be heard; and
3. The notice given here was insufficient to apprise Dr. Tarpley of the charge of contempt, thereby depriving him of due process of law.
We therefore affirm the judgment of the Court of Criminal Appeals reversing the conviction and discharging the respondent.
On June 28, 1972, Kathe E. Tapley filed a complaint against Liberty Super Markets of Birmingham in the Circuit Court for the Tenth Judicial Circuit in Jefferson County. On May 21, 1973, Dr. Tarpley was served a subpoena by the plaintiff which directed him to appear in court on June 11, 1973, 8:45 a.m., and to continue from day to day thereafter until discharged. The subpoena was addressed as follows: "William T. Tarpley, M.D. (on call), 1023 South 20th Street, Birmingham, Alabama."
The damage suit was called for trial on June 12, 1973, in Judge Beasley's courtroom and the trial got underway on the morning of June 13. On June 12, plaintiff's attorney telephoned Dr. Tarpley with regard to his testifying on June 13, 9:00 a.m. The Doctor informed the attorney that he had surgery scheduled that morning which could not be cancelled. The attorney then asked Dr. Tarpley if he could come at 1:30 p.m. on June 13, and the Doctor replied that he would be present in court at that time unless something unforeseen prevented it. The attorney told Dr. Tarpley that if the surgery were completed earlier than anticipated on June 13, to call *411 him and possibly he could be put on the stand before 1:00 p.m. Surgery, however, was not completed until around 12:30 p.m. and Dr. Tarpley did not call the plaintiff's attorney. The Doctor's partner had been out-of-town for two weeks and he had to see forty-six (46) patients in two Birmingham hospitals. Early in the afternoon of June 13, he was at Shelby Memorial Hospital in Alabaster, Alabama (originally scheduled for his out-of-town partner). When he finished at Shelby Memorial, he went to Brookwood Hospital in Birmingham where he arrived at about 4:30 p.m. He got home on the afternoon of June 13, 1973, at about 5:45 p.m.
At 3:00 p.m. on June 13, Judge Beasley adjourned court because of the absence of the Doctor and in an effort to assure his presence in court at 9:00 a.m., June 14, Judge Beasley issued an attachment for him. This attachment was delivered to the office of the Sheriff of Jefferson County by one of Judge Beasley's clerks at 3:10 p. m. on June 13. At 9:00 a.m. on June 14, Dr. Tarpley was not in court; and upon checking, Judge Beasley found that the attachment had never been served because of a mixup in the sheriff's department. Thereupon, he declared a mistrial.
Judge Beasley then ordered the sheriff to "put" Dr. Tarpley under a $50 appearance bond to appear in court at 9:00 a.m., June 14, 1973. When the bond was presented to the Doctor by a deputy sheriff, he executed the same and in addition requested permission to make a copy. The deputy then presented him with the attachment and told him he could also make a copy of it. This was the first time Dr. Tarpley knew that an attachment had been issued for his appearance in court on June 14 at 9:00 a.m. The $50 appearance bond was "to answer a criminal prosecution for the offense of defaulting witness (Judge Beasley's Court)." Judge Beasley also ordered the sheriff and all those involved with the mishandling of serving the attachment to appear before him at 9:00 a.m., June 15, 1973.
At the hearing of June 15, Judge Beasley stated that the purpose of the hearing was to ascertain why Dr. Tarpley had failed to obey the subpoena and to find out why the Sheriff's Department did not serve the attachment. After the testimony by the members of the Sheriff's Department, no action was taken against them. Following an oral statement by the Doctor explaining that his failure to appear was an oversight brought about by his busy schedule, Judge Beasley addressed Dr. Tarpley: "There's not much extenuating circumstances as far as Dr. Tarpley is concerned, and Dr. Tarpley, I feel it is my duty to hold you in contempt as a defaulting witness, and sentence you to four days in jail." In this context, then, we granted certiorari.
Dr. Tarpley is an orthopedic surgeon actively engaged in the practice of medicine in Birmingham. For a number of years an agreement has been in effect between the Birmingham Bar Association and the Jefferson County Medical Society which provides that the attorney for a party to a civil action who causes a doctor to be subpoenaed will communicate with the doctor in advance of trial and keep the doctor advised as to when the case will be tried. This is usually done by the attorney's secretary's calling the doctor's secretary. Sometimes there is a direct call from the attorney to the doctor. The doctor then makes his arrangements to appear in court. The underlying purpose of this agreement is to avoid having a doctor wait in the witness room at the courthouse when he could be treating patients in his office or in the hospitals. This agreement has the sanction of the circuit judges in Birmingham and in other circuits throughout the State where similar agreements exist between local bars and medical societies. A subpoena issued under these circumstances is designated as an "on call" subpoena.
*412 The system of "on call" subpoenas, which is used pursuant to the agreement between the Birmingham Bar Association and the Jefferson County Medical Society, has developed solely for the benefit of the medical profession. It is definitely not for the benefit of the courts or the legal profession. It would be much easier on the courts and the lawyers if the doctors were available in the same manner as other witnesses, instead of having to interrupt other testimony, extend court hours, and vary lunch schedules to accommodate members of the medical profession when they are called on to testify.[1]
Since the system was developed as an accommodation to doctors, it is their abuse that can destroy it. The lack of precedent in this type of case in Alabama obviously stems from the fact that the system of "on call" subpoenas has worked well. It has been based on the mutual respect between the medical and legal professions, the honoring of commitments between them, and the cooperation and forebearance on the part of the trial bench.
Here, the Doctor, who has testified as a witness many times, knew that he was expected in court at 1:30 p.m. on June 13, 1973, and that, if unforeseen circumstances arose, it was his duty to let the attorney or the court know of the situation. If he were unable to foresee on the night before that he would have to visit patients all the next afternoon, the least he could have done was call the attorney when he arrived at home. The record does not reflect that he made any attempt whatsoever to notify the attorney or the court as to his failure to appear. Had he done so, he would have been in court the next morning and the trial would have proceeded even without the attachment's being served.
We do not infer that this was an intentional disregard of the subpoena, but we stress that diligence must be observed in meeting the commitments established between the attorney and the testifying doctor. It is incumbent upon the doctor that he notify either the attorney who called him, or the court, should an emergency or other unforeseen circumstance arise.
The accused argues in his brief that, since there is a specific statute dealing with defaulting witnesses, this specific statute will control over a general contempt charge; and, therefore, failure to appear as a witness is not punishable as contempt. We do not agree. Title 7, § 452, Code of Alabama (recomp. 1958), does not imply that it is the only procedure to be used against a defaulting witness. The statute is couched only in terms of providing recompense to the party who summoned him for his failure to appear and cannot be construed as limiting the power of the court to further impose contempt penalties. There can be no doubt that the courts have the inherent power to punish for contempt such acts that show disrespect, contempt, or that disrupt the functions of the court.
In this case, Dr. Tarpley's acts did take undue liberties with the judicial proceedings taking place and, in fact, disrupted those proceedings to the extent that a mistrial was declared.
The terms of the "on call" subpoena have been made flexible to accommodate the doctors; however, it is still a subpoena. When the attorney set up the 1:30 p.m. time for the Doctor to be in court and testify, that became the command of the subpoena. His failure to heed that command constituted an offense punishable as contempt.
*413 Now we must consider whether the failure to appear constituted direct or constructive contempt.[2] The Court of Criminal Appeals utilized Dangel, Contempt, 7, Section 14, to characterize disobedience of process as an indirect contempt as follows:
"`A direct contempt consists of disorderly or insolent behavior committed during the session of the court, and in its immediate view and presence, such as the unlawful and willful refusal of any person to be sworn as a witness, or the refusal to answer any legal or proper question, or the giving of false testimony, or any breach of the peace, noise or disturbance so near to the court as to interrupt its proceedings. An indirect contempt, sometimes called a `constructive contempt', may consist of willful disobedience of any process or order lawfully issued or made by the court and resistance willfully offered by any person to the execution of a lawful order or process of the court.'" (Emphasis in original).
In Alabama direct contempts are denoted as those contempts committed within the presence of the court, or so near the court as to interrupt its proceedings. Ex Parte Hennies, 33 Ala.App. 377, 34 So.2d 22 (1948). Summary procedures, designed to punish direct contempts, are utilized to fill the need for immediate penal vindication of the dignity of the court. Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). We agree with the holding of the Court of Criminal Appeals, however, that failure to appear as a witness pursuant to an "on call" subpoena is punishable as constructive contempt of the court.
The United States Supreme Court has held that indirect contempt, not committed in open court, requires that the accused be afforded due process of law; that is, notice of the charge and an opportunity to be heard before the court. Harris v. United States, supra; Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). This question has also been spoken to in Alabama. In Ex Parte Bankhead, 200 Ala. 102, 75 So. 478 (1917), the Court held that in order to punish for constructive contempt the offending party should have notice of the nature and character of the charge and be given an opportunity to answer. The Court made its most thorough analysis of a constructive contempt proceeding in Hunter v. State, 251 Ala. 11, 37 So.2d 276 (1948), and again held that the accused is entitled to due process that requires that he be advised of the charges and have a reasonable opportunity to meet them. Respondent in this case was entitled to fair notice of the charge against him.
In Hunter, supra, the Court found that constructive contempt proceedings were sometimes begun by issuing a warrant of arrest, and occasionally by issuing a citation or rule nisi to the accused ordering him to appear and answer the charge. After finding that due process required that the accused be advised of the charge, the Court went on to say:
"This does not mean that a written accusation is not essential. But it need not be verified except to support a warrant of arrest under § 5, supra. But the form of it is not material if it sets out the charges in such manner as to apprise him of the exact nature of it, and what he is called upon to defend." (Emphasis supplied.)
The pertinent parts of the attachment, which respondent copied, are as follows:
". . . and it further appearing that said witness Dr. William T. Tarpley has willfully refused to appear and testify, as directed by said subpoena, as he was required to do, and willfully, and without *414 good excuse, refuses to appear in obedience to said subpoena."
The appearance bond which was actually served on the Doctor was "to answer a criminal prosecution for the offense of defaulting witness (Judge Beasley's Court)."
Actual notice is sufficient to meet the requirements of due process, and there is no doubt that Dr. Tarpley received actual notice of the hearing since he in fact appeared at 9:00 a.m. on June 15, 1973, in accordance with the bond. There is also no doubt that he knew exactly what he was appearing for; to explain to petitioner why he had failed to appear as a witness on the morning of June 13, 1973. However, it is true that nowhere on either the attachment or the bond was the word "contempt" found. Dr. Tarpley did not have actual notice of the contempt charge against him and the hearing was not held directly on the contempt charge. This is an extremely borderline situation as to whether or not due process requirements were in fact met. We must hold, therefore, that in a criminal case such as this, due process requirements must be rigidly adhered to, and in that light he did not in fact have adequate notice of the charge against him.
We understand fully the frustration experienced by the trial Court, and nothing in this opinion is to be construed as infringing on the right of the petitioner to run his courtroom in the manner he sees fit, so long as the requirements of due process of law are met.
The judgment of the Court of Criminal Appeals is affirmed and the respondent is discharged.
Affirmed.
HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, McCALL and FAULKNER, JJ., concur.
COLEMAN and MADDOX, JJ., concur in result.
NOTES
[1] This is not to infer that this interprofessional agreement was reluctantly entered into, or adhered to, by the legal profession. In this connection we note that it is the organized bar that has historically initiated and implemented such agreements. And, to be sure, the legal profession welcomes the improved interprofessional relationship resulting from this mutual effort.
[2] For additional discussion of the distinction between direct and indirect contempt, see Ex parte Graham v. City of Sheffield, 292 Ala. 682, 299 So.2d 281 [1974].