351 So.2d 538 (1977)
In re Criminal Contempt Prosecution against Shearn Moody, Jr., arising out of STATE of Alabama ex rel. PAYNE, etc.
v.
EMPIRE LIFE INSURANCE CO. OF AMERICA, etc.
Ex parte Shearn MOODY, Jr.
SC 2336 to 2339.
Supreme Court of Alabama.
August 19, 1977.
Rehearing Denied September 30, 1977.
*540 William H. Mills for Rogers, Howard, Redden & Mills, Birmingham, for petitioner.
Drayton Nabers, Jr. and William A. Robinson, Birmingham, for respondent, Protective Life Ins. Co.
JONES, Justice.
These cases are before the Court upon writs of certiorari to review a decree of the Circuit Court of Jefferson County adjudging the petitioner, Shearn Moody, Jr., in criminal contempt for the violation of several injunctions and orders issued by that Court. Separate petitions, which had been consolidated on a single record, were filed in this Court to review four convictions.
Moody is the president, chairman of the board, and principal stockholder of the Empire Life Insurance Company of America. Respondents are The Honorable William C. Barber, Judge, Circuit Court of Jefferson County, before whom the contempt proceedings were heard, and Protective Life Insurance Company.

Receivership and Allmon

In order to understand the issues raised, it is necessary to set forth a brief summary of the receivership proceedings and other ancillary and related actions out of which this case arose.
On June 29, 1972, Empire was placed in receivership and ordered liquidated. Moody objected to this and was permitted to intervene as a defendant. Reinsurance was authorized through Protective on June 14, 1974. This reinsurance has been recently upheld by this Court. Moody v. State ex rel Payne, 344 So.2d 160 (Ala.1977).
The four criminal contempt judgments are based upon Moody's interference with the receivership proceedings and his involvement in the case of Allmon v. Bookout, Civil Act No. 74-377-N, United States District Court for the Middle District of Alabama.
*541 Subsequent to the receivership determination, Moody, through counsel, filed various suits and claims against the Receiver, in that capacity and individually. One such case, Allmon, was filed on November 22, 1974. Moody's involvement in Allmon is the basis of the first judgment of contempt. The trial Court held that an implied injunction prohibiting interference with the receivership arose after Empire was placed in receivership, and that Moody violated this implied injunction by filing Allmon.
On January 6, 1975, after Allmon was filed, the trial Court issued an injunction in an attempt to prevent Moody's further interference with the receivership. Thereby, Moody was enjoined from filing, financing or sponsoring any action, or amendment to any action, on behalf of any party, against the Receiver or others without prior approval of the Court. See Moody v. State ex rel. Payne, 295 Ala. 299, 329 So.2d 73 (1976). On January 28, 1975, without seeking approval from the Court, counsel for Moody filed an amended complaint in Allmon. It is the violation of this January 6, 1975, injunction which is the basis of the second contempt adjudication.
An order dated March 10, 1975 (as vacated and superseded by an order dated April 30, 1975), held Moody in civil contempt for violating the January 6 injunction, and specified eight requirements for Moody to purge himself. It is the failure to obey the April 30 order which is the basis of the third contempt adjudication.
On June 16, 1976, the Court ordered Moody to personally appear on July 19 and show that he had purged himself by complying with the April 30, 1975, order. Moody's failure to appear is the basis of the fourth adjudication of criminal contempt.

Criminal Contempt Proceedings
The criminal contempt proceedings against Moody were initiated on August 19, 1976. A petition was filed by Protective and served upon each of three attorneys of record for Moody. On the basis of the petition and supporting papers, the trial Court issued four orders requiring Moody to appear and show why he should not be held in criminal contempt. Moody was served, as directed by the Court, at his address in Galveston, Texas, by both registered and first class mail.
Prior to the scheduled hearing, counsel for Moody filed a motion seeking a continuance on the basis of Moody's health and alleged inability to travel. The Court directed Moody to submit to physical examination and to file medical records and reports concerning his health. After further hearings, the Court held that a general continuance was not warranted, but a conditional continuance was granted subject to a physical examination of Moody.
On September 2, 1976, Moody filed separate motions to quash service, to quash the orders to show cause, and to dismiss. All were subsequently overruled. Trial was commenced on September 13, 1976. The Court determined ex mero motu not to compel Moody's attendance, but to leave the decision whether to appear to Moody, himself. Further motions to continue and for Judge Barber to recuse himself were also denied.
The Court below considered voluminous documentary evidence and oral testimony. The evidence was left open, however, to permit Moody to submit to deposition testimony in explanation of his position and contentions. Because no such testimony was forthcoming, the Court treated the evidence as closed on November 1, 1976.
Pursuant to Tit. 13, § 9, Code, Moody was sentenced to confinement in the Jefferson County jail for four consecutive five-day terms and ordered to pay four fines of fifty dollars each. The Court also held that counsel for Protective was entitled to recover reasonable attorney's fees from Moody. The amount of such attorney's fees, however, was to be determined at a subsequent hearing. This review followed. We affirm in part, and reverse in part.

I.
Numerous issues have been raised by Moody, many of which can only be answered *542 by first resolving the basic questions of what is the nature of a criminal contempt proceeding and what are the requirements of due process of law in such actions.
If the purpose for which the court's contempt power is exercised is to coerce compliance with an order of the court, the action is one for "civil" contempt. If, however, the purpose is to preserve the authority and dignity of the court, and to punish the contemnor for noncompliance with an order of the court, the contempt is "criminal." 17 Am.Jur.2d, Contempt, § 4. If the act or omission is not done in the presence of the court, but at a distance, it is termed "constructive" contempt. Ex parte Seymore, 264 Ala. 689, 89 So.2d 83 (1956). Both statute and cases affirm the discretionary power of the court to enforce its orders and to punish recalcitrance. Tit. 13, § 5, Code, and Ex parte Hill, 229 Ala. 501, 158 So. 531 (1935).
A proceeding in contempt for noncompliance with a lawful court decree is sui generis and not a "criminal prosecution" as that term is commonly understood. Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932), and Robertson v. State, 20 Ala.App. 514, 104 So. 561 (1924). Because the sanctions employed by the court, pursuant to a criminal contempt adjudication, partake so heavily of a criminal nature (i. e., the actual or potential restraint of the body), however, it is essential in all but a narrow category of cases that constitutional principles be applied to this process to assure substantial due process is afforded the accused. The task of this Court, then, is to balance the inherent power of the Court to preserve its dignity and honor by the contempt process, while preserving to the accused contemnor the right to be treated with fairness and substantial due process.
The jurisdiction of the court in a criminal contempt proceeding is not the same as that in the proceeding from which the contempt arose; and this for the reason that the criminal contempt proceeding is a totally separate action. Robertson, supra. In determining whether the requisites for obtaining jurisdiction over the accused have been complied with, the circumstances of each case must be considered in light of substantial due process requirements.
"The reasonableness and hence the constitutional validity of any chosen method [of service] may be defined on the ground that it is in itself reasonably certain to inform those affected . . ." Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).
In reviewing the particular circumstances of this case, the record indicates that: Moody was a voluntary party in the receivership action; he avoided service of process by encamping and remaining outside the state; attorneys actively engaged in his employ were served; service by registered and first class mail was sent to his home in Texas; and he had actual notice of the action, as shown by his attorney's appearance and motions for continuance. Considering these circumstances, and balancing them against the rights of the accused, we think that the service effected was the best notice available under the circumstances. It was calculated to inform Moody of the pending action so as to afford him sufficient opportunity to choose for himself whether to appear, acquiesce, or contest. It would be anomalous, indeed, if a nonresident could avail himself of the use of our courts and then be free to disobey the Court's lawful order and forever insulate himself from the Court's inherent power to punish contempt by merely absenting himself from the state.
The policy of recent decisions is to expand in personam jurisdiction to its due process limits. See, e. g., ARCP 4.2, Comments, pp. 34-35. Decisions in this area are based on notions of fairness and substantial justice. Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965). For these reasons, we think jurisdiction was properly invoked over the accused in the instant action.

*543 II.
Substantial due process requires that the accused shall be given proper notice, advised of the charges and given a reasonable opportunity to be heard. It also entails the assistance of counsel, if requested, the right to be present, give testimony and call witnesses. The notice must contain sufficient information to advise the accused of the nature and particulars of the conduct charged. Yates v. United States, 316 F.2d 718 (10th Cir. 1963); Hunter v. State, 251 Ala. 11, 37 So.2d 276 (1948); Tapley v. Liberty Super Markets of Birmingham, 53 Ala.App. 363, 300 So.2d 401 (1974), and Robertson, supra.
In criminal contempt proceedings, the pleading need not be stated with the particularity required in a true criminal case. People v. Barasch, 21 Ill.2d 407, 173 N.E.2d 417 (1961). While this is true,
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action . . ." Mullane, supra, 339 U.S. at 314, 70 S.Ct. at 657.
Some degree of specificity is clearly required to enable an accused to adequately prepare a defense.
Moody contends that the allegations and accusations contained in the notices were inadequate. Oral argument on this point, however, was limited to the third charge (refusal to obey the April 30, 1975, order).
The petition and the order to show cause, as regards the third charge, merely refer to "disobedience and failure to comply with" the order of April 30, 1975. As stated, that order contained eight separate requirements for Moody to purge himself. Nowhere is there stated which of these requirements Moody failed to meet. Therefore, the show cause order was too general to apprise Moody of the conduct for which he was to be held in contempt. For this reason, the trial Court was in error in holding Moody in contempt on the third charge.
The other three charges likewise contained general averments. In each of these cases, however, one primary act was required. They do not fail for indefiniteness because Moody was sufficiently apprised of which actions he must defend against.

III.
Moody contends that, because he was not personally present at the hearing, the contempt convictions are void. This contention is premised upon Petitioner's interpretation of such proceedings as being strictly criminal in nature. As stated, however, these proceedings are, instead, sui generis.
While no Alabama case has specifically addressed the issue whether an alleged contemnor may be tried in absentia, the United States Supreme Court has held that there is no requirement that the accused, in a criminal contempt proceeding, be personally present. Blackmer, supra. In this case, Moody was not denied the right to be present. Instead, every opportunity to be present was afforded the accused. The order of September 10, 1976, expressly stated that Moody would not be compelled to attend, but that, if he so elected, he would be given a chance to testify and explain the charges against him. Furthermore, in recognition of possible physical infirmities, the trial Court stated that Moody could be given daily transcripts of the proceedings and allowed to give his testimony by way of deposition. This is clearly a case where Moody had the right to be present, but waived that right by his actions. See Haynes v. State, 40 Ala.App. 106, 109 So.2d 738 (1958).

IV.
Moody contends that criminal contempt is a "public offense." Therefore, he asserts, because it is not a felony, it must be a misdemeanor, as defined in Tit. 1, § 7, Code. By this section, "Misdemeanor" is defined as "all other public offenses" which are not felonies. Upon this premise, he contends *544 that the one-year statute of limitations for misdemeanors is applicable. Tit. 15, § 222, Code.
This contention ignores recent case authority which specifically states that criminal contempt is not a "public offense." International Brotherhood of Electrical Workers v. Davis Constructors and Engineers, Inc., 334 So.2d 892 (Ala. 1976).
It has been stated that:
". . . the circumstances [of] each case should be carefully examined to determine when lapse of time would make it unjust or unfair to compel a respondent to answer contempt charges." Barasch, supra, 173 N.E.2d at 420.
The appropriate time limitation for bringing a criminal contempt charge must be determined on a case by case basis by determining the nature of the act or acts, the prejudice the delay may cause the accused and whether the delay is unreasonable. This theory complies with the balancing between the authority of the Court and the rights of the accused.
Applying this test, we hold that the first charge is due to be reversed. Empire's receivership was ordered on June 29, 1972. The Allmon case was filed on November 22, 1974. While this, in itself, would not warrant reversal, the fact that the criminal contempt petition was not filed until August 19, 1976, almost two years after the act occurred, is unfair and prejudicial to Moody. Witnesses and other evidence could easily have become unavailable in this interim.
The other two charges (the second and fourth) do not fail for this reason. The fourth case concerns acts within one month prior to the petition. The second case concerns continuing acts which clearly extend any limitation period and the accused cannot be heard to complain of prejudice from such situations.

V.
Petitioner's contention that Judge Barber abused his discretion by not recusing himself is without merit. At the hearing on the show cause order, counsel for Moody moved that Judge Barber recuse himself on the grounds of several statements made at a hearing on July 19, 1976. At this hearing, Moody sought a continuance based on his poor health. A review of Judge Barber's statements indicates little more than that he felt he had been fair with Moody, but that Moody had not been fair with the Court, and that he was growing impatient with Moody's failure to cooperate.
When bias and prejudice are the stated grounds for recusal, the general rule is:
"`It is actual existence of prejudice on the part of a judge, not the mere apprehension of it by a party which disqualifies. Further, the disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity . . .'" Duncan v. Sherrill, 341 So.2d 946, 947 (Ala.1977).
Judge Barber's statements do not amount to a showing of bias and prejudice necessary to compel recusal. Furthermore, upon a review of the entire record, we think Judge Barber is to be commended for the patience displayed in light of Moody's consistently recalcitrant behavior.

VI.
Petitioner further contends that the trial Court abused its discretion in not granting a continuance because of Moody's poor health. It is settled law that the appropriateness of a continuance is within the sound discretion of the trial Court. Mobile Cab & Baggage Co., Inc. v. Busby, 277 Ala. 292, 169 So.2d 314 (1964). A continuance is not favored in the law and the trial Court's discretion will not be reversed absent a showing of gross abuse. Johnson Publishing Co., Inc. v. Davis, 271 Ala. 474, 124 So.2d 441 (1960); and World Homes, Inc. v. Wilson, 54 Ala.App. 47, 304 So.2d 603 (1974).
*545 The Court below granted a conditional continuance, subject to a physical examination of Moody. Furthermore, the Court permitted Moody to testify by deposition if he so desired. The Court did all within its power to recognize Moody's infirmities, while at the same time, expeditiously proceeding with an important controversy. For these reasons, the contention that the trial Court abused its discretion in not granting the continuance is without merit.

VII.
In addition to the statutory punishment of fifty dollars and five days in jail, the trial Court ordered Moody to pay reasonable attorney's fees to Protective for expenses incurred in the preparation and prosecution of the contempt proceedings. In so doing, the trial Court exceeded its authority.
Generally, attorney's fees are recoverable only where authorized by statute, when provided in a contract or in an equitable proceeding where the efforts of an attorney creates a fund out of which fees may be paid. State v. Alabama Public Service Commission, 293 Ala. 553, 307 So.2d 521 (1975); Hartford Accident & Indemnity Co. v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965), and Taylor v. White, 237 Ala. 630, 188 So. 232 (1939). There is no applicable statute before us. Also, the benefit received in criminal contempt proceedings inures to the Court and the State, and only incidentally to a suitor.
Moody's contention that the ordering of attorney's fees renders the entire judgment void, however, is misplaced. He relies upon City of Birmingham v. Perry, 41 Ala.App. 173, 125 So.2d 279 (1960), wherein it was held that, when a court exceeds its jurisdiction in assessing punishment in a contempt proceeding, the judgment is void. In that case, the trial Court ordered the contemnor to hard labor. This clearly exceeds the punishment allowed for contempt convictions. Tit. 13, §§ 9, 143, Code.
Here, however, the award of attorney's fees is not, strictly speaking, punishment. Also, such punishment was different in degree, whereas in this case, it was different in kind. The award of attorney's fees has been allowed in other states. In such situations, however, the amount may not exceed the statutory penalty. O'Rouke v. Cleveland, 49 N.J.Eq. 577, 25 A. 367 (1892). See also 17 C.J.S. Contempt § 97, p. 274.
Criminal contempt is not an equity or civil action. As stated, it is sui generis. Therefore, the award of attorney's fees is not proper. It must be considered as mere surplusage and severed from the judgment decree.

VIII.
The second case of contempt is based on Moody's complicity in the filing of the amendment in Allmon. This also was the basis of civil contempt charges. Moody cannot be heard to complain that the basis of the criminal contempt adjudication is also the basis of civil contempt. In brief, counsel for Moody stated:
"Admittedly, assuming a violation of the January 6, 1975 order, this same conduct may be both a civil contempt and a criminal contempt."
Noting the distinction between civil and criminal contempt, the same acts may justify a court resorting to both coercive and punitive measures. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Ex parte Griffith, 278 Ala. 344, 178 So.2d 169 (1965), and Ex parte Abercrombie, 277 Ala. 479, 172 So.2d 43 (1965).

IX.
Moody raises numerous objections to various items of documentary evidence and to certain statements which he contends are hearsay. Under the view taken that Petitioner can only be held in contempt for violation of the January 6, 1975, injunction, and for his refusal to appear in court, as ordered, on July 19, 1976, (cases two and four) we believe that the evidentiary issues are moot.

*546 Conclusion
As has been shown, criminal contempt is a sui generis proceeding. Because it partakes of a criminal nature, however, a balance must be struck between the rights of the accused and the power of a Court to uphold its authority and dignity.
Utilizing this test, we hold the first charge of contempt must fail for lack of timeliness. Also, the third charge must be reversed for lack of specificity of the charge. As to each of the second and fourth charges, however, the sufficiency of notice, and the timeliness and specificity of each charge under all the circumstances, was appropriate; and the evidence was more than sufficient.
For the reasons stated above, the convictions of criminal contempt as to charges two and four are affirmed and the convictions of criminal contempt as to charges one and three are reversed.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
TORBERT, C. J., and FAULKNER, SHORES and EMBRY, JJ., concur.
BLOODWORTH, MADDOX, ALMON and BEATTY, JJ., concur in part and dissent in part.
BLOODWORTH, Justice (concurring in part and dissenting in part).
I concur in all of Mr. Justice Jones' opinion for the majority except as to that part of Part II in which he finds the trial court to be in error for holding Moody in contempt on the third charge. He reasons that the show cause order was too general to apprise Moody of his alleged contumacious conduct.
I dissent from that part of the holding because I find the third show cause order clearly called upon Moody to show cause why he "should not be adjudged in criminal contempt . . . because of his disobedience and failure to comply with the provisions of the Order . . . of April 30, 1975." A copy of the April 30, 1975, order accompanied the show cause order. Thus, there could have been no doubt, as far as Moody was concerned, that he was charged with disobeying and failing to comply with all "the provisions of the order." Surely, it would be an overly technical interpretation to insist that by not using the word "all" Moody wasn't apprised as to which one of the eight requirements he failed to meet.
As stated in our case of Hunter v. State, 251 Ala. 11, 37 So.2d 276 (1948), with respect to the need for a written accusation in these cases, viz.:
"`This does not mean that a written accusation is not essential. But it need not be verified except to support a warrant of arrest under § 5, supra. But the form of it is not material if it sets out the charges in such manner as to apprise him of the exact nature of it, and what he is called upon to defend.' (Emphasis supplied.)"
MADDOX and BEATTY, JJ., concur.
ALMON, Justice (concurring in part and dissenting in part):
I concur in the opinion of Mr. Justice Jones except that part which holds that the first charge must be reversed for laches.
The primary case out of which the contempt arose was active and had not been finally concluded. Additionally, there was no showing of prejudice occasioned by the delay.
BEATTY, Justice (concurring in part and dissenting in part):
I concur with the opinion of Mr. Justice Jones except in two aspects: that part of his opinion which holds that the first charge of contempt must be reversed for laches, and that part dealing with notice to Mr. Moody of his contemptuous conduct.
While I agree that the circumstances of each case will determine the effect of lapse of time on the contempt charge, there is no proof here that the alleged contemnor was prejudiced by any delay in bringing the first charge or that the delay in bringing it was unreasonable. Moody had an ample opportunity to introduce evidence of prejudicial *547 delay and simply failed to introduce any such evidence. Under those circumstances, I believe the trial court is entitled to the presumption of correctness in his ruling.
In connection with whether or not the trial court gave the proper notice of the contempt charge to Moody, I wish to align myself with the opinion of Mr. Justice Bloodworth.
MADDOX, J., concurs.