The father appeals from a judgment of the trial court ordering him to pay child support pursuant to Rule 32, Alabama Rules of Judicial Administration, and finding him to be in contempt of court.
The mother filed a complaint for divorce and a motion for pendente lite child support in October 1991. On October 18, 1991, the trial court issued an order directing the father to provide both the clerk of the court and the mother with a completed Child Support Guideline income statement/affidavit and supporting documents. The father was directed to comply with this order within seven days and to begin payment of temporary child support to the mother on the date of his compliance.
On November 15, 1991, the mother filed with the trial court a motion to have the father held in contempt, alleging that the father had failed to commence payment of temporary child support. On December 6, 1991, after a hearing on the mother's motion, the trial court found the father in contempt for his failure to comply with its order concerning the filing of an income statement/affidavit and the payment of temporary child support. The court ordered that the father serve one day in the county jail; however, he could purge himself of contempt by immediately filing the requisite statement/affidavit with the court clerk and by commencing payment of temporary child support to the mother. The trial court further ordered the father to pay the mother $150, within 30 days, for her attorney's fee.
The divorce action was heard on March 11, 1992. Prior to trial the parties stipulated that the mother would have custody of the two minor children. The parties further stipulated to the division of property and the payment of marital debts.
The primary issue for determination at trial was the father's child support obligation under Rule 32, A.R.J.A. Considerable testimony was presented as to the father's employment history, his current income, and his earning potential.
The mother also testified at trial that the father had not paid her attorney's fee of $150 as ordered by the trial court on December 6, 1991. The father testified that he had forgotten to make this payment but that he was prepared to pay the mother. The record shows that the father paid this money to the mother during the trial, in the presence of, and with the knowledge of, the trial court.
The trial court entered a final judgment of divorce on March 17, 1992. In this judgment the court found that the father was *Page 1385 
presently "voluntarily unemployed and underemployed." Consequently, it ordered the father to pay monthly child support of $506 based on imputed income, pursuant to Rule 32(B)(5), A.R.J.A. The trial court further found the father to be in contempt of court for his failure to timely comply with its previous order requiring him to pay the mother's attorney's fee. The father was ordered to serve one day in the county jail. Following a post-trial motion from the father, the trial court modified the contempt citation and ordered the father to pay a fine of $150 in lieu of the jail sentence.
On appeal the father first contends that the trial court erred in holding that he was voluntarily unemployed or underemployed and in ordering him to make child support payments based on his imputed income.
We note that where, as in this case, the trial court is presented ore tenus evidence, its judgment will be presumed correct and will not be disturbed on appeal unless it is shown to be plainly and palpably wrong. Blankenship v.Blankenship, 534 So.2d 320 (Ala.Civ.App. 1988). We would also note that actions concerning child support that are filed on or after October 9, 1989, although guided by mandatory consideration of Rule 32, A.R.J.A., are still committed to the sound discretion of the trial court. Belser v. Belser,558 So.2d 960 (Ala.Civ.App. 1990).
The record shows that, except for a period of a few months, the father was employed and earning approximately $25,000 to $28,000 per year from the time of the parties' marriage in October 1985 until August 1991. Just prior to the parties' separation in August 1991, the father was terminated from his job as an insurance agent for a company he had worked for since 1989. The father testified that he was earning approximately $25,000 per year at the time of his termination, although other testimony indicated that the father's gross income for 1990 was $27,000. The father claimed that his employment was terminated because of his own wrongdoing, stating that he was fired for mishandling clients' insurance premiums. The record also reveals that from 1985 to 1989 the father worked for a beverage company. The father testified that he had voluntarily quit that job at a time when he was making approximately $28,000 per year.
The manager of the insurance company where the father had been employed testified that the father had originally approached him about leaving his job and that the termination of the father's employment had been mutually agreed upon. He stated that the father's termination notice did not reflect that the father had been fired for wrongdoing. The manager further testified that the father had scored higher on his state licensing examination than anyone else he was aware of, that the father had a tremendous ability to read and comprehend, and that the father was still capable of working as an insurance agent.
The father testified that since the termination of his position as an insurance agent, he has made several job inquiries and has submitted several job applications but that he has been unable to secure employment as lucrative as his previous positions. He stated that until he was able to find alternative employment, he was doing carpentry work and earning less than $200 per week. He testified that he was about to begin a job stocking shelves in a supermarket. This position would pay approximately $200 per week.
After determining that the father was capable of earning at a level higher than that demonstrated by his current income, the trial court imputed to the father an income of $2,000 per month. Using this figure and the mother's monthly earnings, the court calculated the father's child support obligation to be $506 per month under the Child Support Guidelines. As the court indicated in its final order, $2,000 is actually less than the father's gross monthly income with his previous employers.
In view of the evidence and the discretion afforded the trial court under paragraph (B)(5) of Rule 32, A.R.J.A., we cannot conclude that the trial court committed error in finding the father to be voluntarily unemployed or underemployed and in imputing to him a monthly income of $2,000. Accordingly, we affirm the portion of the *Page 1386 
trial court's judgment establishing the father's child support obligation as $506 per month.
The father also contends that the trial court's contempt order of March 17, 1992, was erroneously entered without previous petition or notice to him, depriving him of the required due process protection. We agree.
The father disobeyed the court's order of December 6, 1991, by failing to timely pay the mother's attorney's fee. This constituted an "indirect" contempt, and consequently it was necessary that the father be afforded notice of any contempt proceedings against him and a reasonable opportunity to be heard. Rule 33.3, Alabama Rules of Criminal Procedure;State v. Thomas, 550 So.2d 1067 (Ala. 1989); Brooks v.Brooks, 480 So.2d 1233 (Ala.Civ.App. 1985). A review of the record reveals that a contempt proceeding was not initiated as required by Rule 33.3, A.R.Crim.P., through the issuance to the father of a citation. See International Brotherhood ofElectrical Workers, Local 136 v. Davis Constructors Engineers, Inc., 334 So.2d 892 (Ala. 1976).
Nor do we find evidence that in advance of the trial of March 11, 1992, the father received actual notice that contempt proceedings had been initiated or were pending, or that they were going to be prosecuted by the mother or by the court ex mero motu. In fact, a pretrial order entered by the trial court on February 24, 1992, indicated that the parties had agreed "that child support was probably the only issue left" to be resolved by the trial. Nowhere in this order is the word "contempt" found, nor was it mentioned at trial.
Our supreme court has held that in cases involving findings of criminal contempt, due process requirements must berigidly adhered to. Ex parte Tarpley,293 Ala. 137, 300 So.2d 409 (1974). Because the father did not have notice of any contempt proceedings against him, the portion of the trial court's final judgment holding him in contempt must be reversed and the cause remanded with instructions that the trial court enter an order consistent with this opinion.
The mother's request for an attorney's fee on appeal is granted in the amount of $300.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.