The parties were divorced in June 1990. By agreement, custody of their two minor children was granted to Nancy Helms (mother), with Victor Helms (father) being required to pay $500 per month in child support. The father also was required to pay $300 per month to the mother toward the parties' indebtedness on their marital residence. The parties' agreement was incorporated by the trial court into its divorce judgment.
In May 1991, the mother filed a motion for contempt, alleging that the father was $600 in arrears on his child support and marital residence payments. In addition to answering the mother's motion, the father counterclaimed, seeking a reduction in his monthly support payment due to a considerable change in his employment income. In July 1992, the trial court conducted an ore tenus proceeding. Shortly thereafter, the father filed a motion to amend his counterclaim, pursuant to Rule 15(b), Alabama Rules of Civil Procedure, arguing that the $300 monthly marital residence payment also was modifiable since it was periodic and terminable. According to the case action summary, this motion was granted, and the July 1992 proceeding apparently concerned both the $500 and the $300 monthly obligations of the father. The trial court, in denying the father's counterclaim, stated the following:
 "[T]he Court finds that the [father] was employed with Wadsworth Oil Company making $32,000.00 a year and that the [father] because of discussions between his new wife and her family voluntarily left his position with Wadsworth Oil and moved to Daleville without any firm prospects of employment and with only extremely tentative prospects of securing self-employment through the possible acquisition of a restaurant, with the assistance of his father-in-law; that although he has been working occasionally with his father-in-law's construction firm and has received some payment therefor, he has been working substantial periods with his wife's business without pay; that [the father] is employable and is able to maintain an income at a level at or near the amount that he *Page 635 
was employed at [when] he voluntarily left his employment, but for such voluntary termination of employment."
On appeal, the father argues that the trial court's refusal to modify his monthly child support and marital residence payments was reversible error. We disagree with the father's arguments and affirm the trial court's judgment.
Initially, we note that a trial court's judgment, when based upon ore tenus evidence, is presumed correct and will not be disturbed on appeal unless that judgment is shown to be plainly and palpably wrong. Lee v. Lee, 608 So.2d 1383
(Ala.Civ.App. 1992). Also, the modification of a prior order based on a change of circumstances is left to the sound discretion of the trial court, and the exercise of such discretion will be disturbed only when abused to the point that the judgment is plainly and palpably wrong. Tucker v. Tucker, 588 So.2d 495
(Ala.Civ.App. 1991). When, as here, the order establishing the amount of support is based on an agreement of the parties, the order "should not be modified except for clear and sufficient reasons and after thorough consideration and investigation."Id. at 497. Such close scrutiny especially is appropriate where a short time, approximately two years here, separates the original order and the modification hearing. Jeffcoat v.Jeffcoat, 423 So.2d 888 (Ala.Civ.App. 1982). Furthermore, it is the ability to earn, instead of one's actual earnings, which is the proper factor for the trial court to consider in a modification proceeding. Scott v. Scott, 563 So.2d 1044
(Ala.Civ.App. 1990).
The record revealed that, at the time of the parties' divorce, the father was earning $24,600 annually as a supervisor of a convenience store in Enterprise. Shortly afterwards, he accepted a similar position with Wadsworth Oil Company (Wadsworth) in Pelham earning $32,500 annually. In August 1990, the father remarried a woman who had two minor children from a previous marriage.
The father testified that, in March 1991, he quit his job with Wadsworth and moved with his current wife and her children to Daleville, into the home of his current wife's parents. According to the father, he was feeling job insecurity at Wadsworth because of its possible sale. Consequently, he said, he moved to Daleville to explore certain jobs and business ventures with his current wife's parents. In particular, the father testified that his current wife was offered a partnership in an accounting and tax preparation business, Automated Data Service Center (ADSC), which was operated by her mother. The father testified that he and his current wife's father considered buying a restaurant; that he was planning on working in the wife's family's construction company (O'Field); and that his current wife's father was planning on building a convenience store in town. Based on the testimony, all of these considerations were preliminary at best; no plans had been finalized.
In short, none of the Daleville business ventures materialized. The record revealed that, since quitting his job at Wadsworth and moving into the home of his current wife's family, O'Field was in the process of filing for bankruptcy; the possible purchase of the restaurant had been lost due to the lack of bank financing; ADSC's profits were small and workers there had been laid off; and the financial problems of O'Field prevented the start-up of a convenience store. The father testified, in essence, that his work in Daleville had been sporadic, and he stated his monthly income at the time of trial to be $1000.
On cross-examination, the father admitted that he left his job with Wadsworth voluntarily and that, as far as he knew, he still could have been employed there at the time of trial. He also stated that he has a college degree in business management, he has no employment disability, he is capable of working as a manual laborer, and he has the potential to earn income. The father testified that, although he could prepare tax forms and had been doing so for ADSC without pay, he had not sought to work in the tax field on a private basis.
The record indicated that the father was $4,500 in arrears on his support payments at the time of trial. The record also indicated that the father had previously borrowed money to pay these obligations, among other things, but he testified that he could no *Page 636 
longer do so because he lacked the necessary criteria for obtaining bank loans. Concerning this borrowing, the father testified that certain amounts were used as support payments and certain other amounts were used to purchase a big screen television and a stereo system in November 1990. At the time of trial, the father still owed certain amounts on these loans.
In his brief, the father contends that, although he left his job voluntarily, he did so believing that his income would remain the same or would increase as a result of his new business ventures. He also argues that the trial court ignored the fact that he left his job with Wadsworth because of a perception that his job was in jeopardy. The father continues by blaming his plight on poor economic conditions which, according to him, have resulted in an inability to maintain a sufficient level of income necessary to pay his support obligations. We note that the father's current wife testified that, at the time of their move to Daleville, only she had definite plans of employment; the father had no definite plans.
After carefully reviewing the record and applying the attendant legal standards, we cannot say that the trial court abused its discretion in denying the father's counterclaim for modification. Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.