636 So.2d 437 (1994)
Janine Renee Lyford FRENCH
v.
Lonny Carlton LYFORD.
AV92000502.
Court of Civil Appeals of Alabama.
February 18, 1994.
*438 W. Donald Bolton, Jr., Foley, and Samuel G. McKerall, Gulf Shores, for appellant.
No brief for appellee.
ROBERTSON, Presiding Judge.
This is a child visitation and contempt case.
Janine Renee Lyford French and Lonny Carlton Lyford were divorced by the Baldwin County Circuit Court on February 12, 1992. The judgment of divorce incorporated an agreement by the parties, which provided, inter alia, that custody of their then two-year-old son was to be awarded to the mother, Janine; that the parties would file a joint petition for termination of the father's parental rights; that the father was to pay the parties' debt to Providence Hospital; and that the father was to pay the fee of the mother's attorney.
The parties filed a joint petition for termination of the father's parental rights; however, the trial court[1] denied the petition because it found that terminating the father's parental rights would not be in the best interests of the child. It appears from the record that while the trial court did not award the father specific rights of visitation with the child, it did order the father to pay child support.
On August 7, 1992, the trial court received a letter from the mother complaining that the father had failed to pay her the court-ordered child support, had failed to pay the debt owed to Providence Hospital, and had failed to pay her attorney's fee as ordered by the trial court.
The trial court notified the mother that it was treating her letter as a pro se petition for a rule nisi and set the case for a hearing. At the hearing, the father filed a motion to modify the judgment of divorce, seeking a right of visitation with the parties' minor child. The father contended that a material change of circumstances had occurred since the entry of the judgment of divorce and that he no longer desired a termination of his parental rights. Following an ore tenus proceeding *439 on the mother's petition for rule nisi, at which the mother appeared pro se, and on the father's motion to modify, the trial court entered an order, directing the father to pay a child support arrearage of $1,780, to be paid at the rate of $100 per month in addition to his current child support obligation. The trial court also awarded the father standard rights of visitation with the parties' minor child for periods when the child is residing in the United States, and four weeks' visitation during the summer when the child is residing outside of the United States.[2]
The mother immediately retained an attorney, and on March 25, 1993, the same day of the order, and on March 26, and March 30 the mother and the father filed numerous post-judgment motions, petitions, and cross-petitions, seeking various relief. Among the father's pleadings was a motion for sanctions filed after the mother had left the state, alleging that the mother had taken the child to Germany without allowing him visitation as ordered by the trial court.
On April 5, 1993, the trial court conducted a hearing on all the pleadings; however, the mother was not present (she had already left for Germany). The trial court entered a judgment on April 8, 1993, denying the mother's motion to set aside the trial court's order of visitation and finding the mother in contempt of court for her defiance of the trial court's March 25, 1993, order. As sanctions for the contempt, the trial court ordered the mother to make all arrangements for the minor child's delivery to the father for summer visitation and required the mother to bear all of the transportation costs associated with the minor child's summer visitation with the father.
The mother raises four issues on appeal: (1) whether there was any valid order of the trial court that the mother could be held to have violated; (2) if there was any evidence before the trial court to support its finding of contempt; (3) whether requiring the mother to bear the expense of transporting the child from Germany to the United States for summer visitation with the father amounted to an impermissible sanction for contempt; and (4) whether the award of visitation by the trial court was an abuse of discretion.

CONTEMPT
We address the mother's first three issues, all concerning the trial court's order holding her in contempt of court, as one issue. Our supreme court, in Baker v. Heatherwood Homeowners Association, 587 So.2d 938 (Ala.1991), held that Rule 33, A.R.Crim.P., applies to contempt proceedings in civil cases. Rule 33, A.R.Crim.P., necessitates certain procedural requirements, which are absent in this case, before a person can be found in contempt of court. Specifically, Rule 33.3(a) provides that, except for direct contempts committed in the presence of the judge, "no person shall be found in contempt without a hearing held after a citation of the charge is given." (Emphasis added).
The rule further provides:
"(b) Citation. The citation shall:
"(1) Be in writing and state that the person to whom it is directed is cited for contempt of court;
"(2) Order that the person cited appear before the court to show cause why he or she should not be found in contempt of court as charged or should not be punished or incarcerated as provided by law;
"(3) State the essential facts constituting the contempt cited; and
"(4) Specify the time and place of the hearing."
Rule 33.3(b), A.R.Crim.P.
No citation was given to the mother in this case as required by Rule 33.3, A.R.Crim.P., and it is unclear from the record if she even knew about the contempt proceeding. Consequently, the trial court erred by finding the mother in contempt and imposing sanctions. Baker; Lee v. Lee, 608 So.2d 1383 (Ala.Civ.App.1992); see also Stack v. Stack, [Ms. AV92000412, February 11, 1994], 1994 WL 37531 (Ala.Civ.App.1994). *440 That part of the trial court's judgment is reversed and annulled.

VISITATION
It is well-settled law in Alabama that the determination of visitation rights for the noncustodial parent is a matter resting within the sound discretion of the trial court and that its judgment on that matter will not be reversed on appeal except for an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App.1991). This broad discretion is based upon the trial court's having the benefit of an ore tenus hearing and the opportunity to personally observe the litigants and witnesses. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the child, and each case must be decided on its own facts and the personalities involved. Durham v. Heck, 479 So.2d 1292 (Ala.Civ.App.1985).
It is obvious from the record that the mother has concerns regarding her minor son's visitation with his father and that she would prefer that her present husband adopt the child. There was testimony from the mother that the father had made little or no effort to see the child. The father resides with his father, and the record reflects that the paternal grandfather is very fond of the child. There was testimony that the father had some personal problems involving alcohol and driving violations and had a history of unstable employment; however, two different trial judges have determined that it would be in the child's best interest to know and to visit with his father. After reviewing the record, in light of the attendant legal presumptions, we cannot hold that the trial court abused its discretion in awarding the father visitation with his minor son.
AFFIRMED IN PART; AND REVERSED AND ANNULLED IN PART.
YATES, J., concurs.
THIGPEN, J., concurs in part and dissents in part.
THIGPEN, Judge, concurring in part and dissenting in part.
I respectfully dissent from that portion of the opinion regarding visitation. This court generally affords great deference to a trial court regarding its discretion in determining matters of visitation; however, that discretion is not unbridled. The trial court must consider the facts and circumstances of each particular situation. Pelanne v. Pelanne, 572 So.2d 484 (Ala.Civ.App.1990). Furthermore, the foremost consideration must always be the best interests and welfare of the child. Durham v. Heck, 479 So.2d 1292 (Ala.Civ. App.1985).
Although some visitation for the father in this case may be appropriate, I believe that sudden, unsupervised, lengthy visitation with this father is so inappropriate as to amount to an abuse of discretion. Close review of the record reveals unique facts in this case which make the visitation ordered by the trial court inappropriate, and indicates that the best interests and welfare of this child may not have been the foremost consideration.
It appears of record that the father of this child was a teenager when the child was born; that the father and the mother were not married until the child was approximately two months old; that the father's name does not appear on the child's birth certificate; that the father denied paternity and requested blood tests; that the father initially showed no interest in the child; and that the father previously attempted to terminate his parental rights. It appears that although the trial court refused the father's request to terminate his parental rights and ordered that he pay child support, there was no visitation requested or ordered at that time. The father testified that he was represented by a lawyer throughout the divorce and the termination proceedings. It was not until the mother sought the assistance of the court in attempting to collect the court-ordered child support from him that the father sought visitation for the first time.
The record discloses that the mother has remarried, and that her new husband desires to adopt the child. The mother's new husband is in the military service, and the mother *441 and the child have moved to Germany to be with him. The father testified that he had told the mother previously that he would sign adoption papers if the mother had them prepared.
There is evidence in the record that the father has some problems involving alcohol abuse, that he has no driver's license because of drinking and driving violations, that he lives with his father in a house trailer, and that he has an unstable employment history. The record reveals that the father was on probation at the time of the hearings. The paternal grandfather testified that the mother brought the child to visit him on several occasions. There was testimony from the mother and her husband that they feared for the child's safety if the child was left alone with the father because of the father's irresponsible behavior involving illegal drugs, drinking, and driving. The father testified that he had been provided visitation opportunities at the initiation of the mother and her new husband, but had failed to exercise same consistently. There is also evidence that the father failed to carry through with other scheduled visitations. Further undisputed testimony indicated that the child does not even know who his father is.
I agree that this child and the father should be afforded an opportunity to establish a parent-child relationship; however, it appears to me that the abrupt and extensive visitation ordered constitutes an abuse of discretion. I do not believe that it is in the best interest of this three-year-old child to be suddenly subjected to weekend and extensive intercontinental visits with a parent with whom he has had almost no prior contact, and who is virtually a stranger to the child, for whatever reason. Additionally, the evidence is undisputed that the father's substance abuse problems have contributed to several car crashes and that the child's safety may be jeopardized if he is left unsupervised with the father. The record discloses that the father expressed no interest in visitation until the mother sought to enforce his court-ordered child support obligation. The ordered visitation subjects a small child to a long, transoceanic flight only to be met at the airport by a virtual stranger. Although it may be in the child's best interest to be allowed an opportunity to get to know and visit with the father, subjecting a three-year-old child to extended, lenient visitation with a person with whom he has no relationship and no knowledge that he is his father, and with whom he may not be safe, in my opinion, overlooks the best interests and welfare of the child.
NOTES
[1] The trial judge in that proceeding was the predecessor of the judge who entered the judgment here on appeal.
[2] The mother had remarried and was taking the child to live with her and her new husband, a serviceman, in Germany.