YATES, Judge.
James L. Callaway and Deborah J. Cal-laway entered a purported marriage on May 19,1996; James was 56 years old and Deborah was 43 years old. James sued for a divorce on May 9, 1997; Deborah sued James for a divorce on May 13, 1997. The actions were filed in the Baldwin Circuit Court; that court consolidated the actions. On February 6, 1998, James moved to dismiss the consolidated case, stating that another divorce action against him had been pending in the Circuit Court of Mobile County, and that case had resulted in the Mobile Circuit Court’s entering an order on December 12, 1997, divorcing him from Brenda Yaneth Callaway. James contended that because the Mobile court had determined that a marriage existed between him and Brenda, and because under Alabama law a person can be married to only one person at a time, the marriage to Deborah was “void” and the divorce action was due to be dismissed. On February 9, 1998, Deborah amended her complaint to state claims based on allegations of fraud, deceit, and fraudulent concealment. On February 27, 1998, the Circuit Court of Baldwin County denied James’s motion to dismiss; separated the fraud, deceit, and fraudulent-concealment claims for a separate trial; and ordered Deborah to amend her complaint to ask for an annulment. Deborah amended her complaint that same day to seek an annulment.
The court entered an order purporting to divorce the parties on June 29, 1998, and ordered that each party retain the personal prop'erty in his or her possession, pay the debts in their individual names, pay his or her own attorney’s fee, and pay one-half of the mediation and court costs incurred in the case. Deborah appeals, following the denial of her post-judgment motion.
Deborah first argues that the court erred when it entered a judgment of divorce rather than an annulment. Before they were married, James told Deborah that he had been married three times; Deborah had been married two times. They underwent a series of premarital counseling sessions at an Episcopal Church. James informed the priest during these sessions that he had been married three times and he purported to describe the circumstances of each of those marriages.
Deborah discovered after marrying James that he had, in fact, been married five times. Approximately one week after their marriage, Deborah discovered an envelope that contained in the return-address portion the name “Brenda Callaway” and James’s home address. Deborah described the handwriting as “childlike.” She testified that when she confronted James about the envelope he became upset and told her that while he was in Honduras on business he had met a girl in a bar and had taught her how to write her name in English. Deborah testified that a few days later she received an anonymous telephone call from a man stating that he was the fiancé of a girl named Brenda, and that *1136 Brenda was married to James. Deborah stated that the man told her that James had married Brenda in Honduras when she was 16 years old and had brought her to Alabama. Deborah testified that the man told her that he and Brenda could not get married because James had not divorced Brenda.
Deborah further testified that when she confronted James about the information she had received, he said that he had had trouble in the past with the man and that Brenda was a girl he had “picked up” in Honduras and had brought back to the United States to do housekeeping for him. James testified that he had first met Brenda in 1990 in Honduras. He stated that a man who worked for both the United States Government and the Honduran government had told him that for $1,700 James could get a visa and a green card that would permit Brenda into the United States temporarily, and that he could then get her permanent residency. James further testified that part of the “deal” was that he pay Brenda’s family $500 up front, send them $50 per month, help them purchase a house, and provide Brenda with clothing. James testified that there was no civil marriage ceremony and that everything was taken care of “on the streets” of Honduras. He stated that he believed that Brenda was “domestic help” and “somebody to live with,” but that he did not think he was married to her and that he did not introduce Brenda as his wife.
Brenda testified by deposition that she had met James through a family friend in San Pedro Sula, Honduras, in 1990. She said that James had told her he was lonely and wanted to “settle down” and that he wanted to marry her and take her to the United States. Brenda testified that she and James, three weeks after meeting each other, were married in the Honduran capital of Tegucigalpa before a government official. She stated that the marriage was consummated in Tegucigalpa on their wedding night. Brenda further testified that James informed American Embassy officials that she was his wife, and that after obtaining the proper documents she entered the United States as James’s wife. Brenda stated that James would introduce her as his wife only to certain people, but that she and James lived as husband and wife in James’s home.
Brenda testified that James had promised her before marrying her that he would send her to school so that she could finish her education; however, she said, after they were married and living in the United States James refused to let her attend school. Brenda also testified that James would send her back to Honduras periodically and that during her absences he would “take up” with another teenage girl. Brenda stated that she had attempted to leave James, but that he became physically abusive and refused to let her leave. She eventually separated from James in November 1993. Brenda testified that after she left James’s home he told her that he had obtained a divorce from her in Honduras. Brenda stated, however, that when she requested a copy of the divorce papers James told her that he had lost them. She testified that she later traveled to Honduras and discovered that James had, in fact, never divorced her. She stated that she then hired an attorney and commenced divorce proceedings in Mobile County, Alabama.
We note that a judgment of the trial court based on ore tenus evidence is presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Helms v. Helms, 624 So.2d 633 (Ala.Civ.App.1993). However, that presumption does not apply when the trial court has improperly applied the law to the facts of the case. Laminack v. Laminack, 675 So.2d 479 (Ala.Civ.App. 1996). “A [man] can have but one lawful [wife] living, and so long as [she] is alive and the marriage bond remains in full force, all [his] subsequent marriages, whether meretricious or founded in mistake and at the time supposed to be lawful, are utterly null and void.” Dorsey v. Dor *1137 sey, 259 Ala. 220, 224, 66 So.2d 135, 139 (1953). The court may properly annul a marriage on the ground that the marriage was void from the outset. Broadus v. Broadus, 361 So.2d 582 (Ala.Civ.App.1978).
“The rule is that if a party to a marriage has been married previously to another and that marriage partner is alive, a presumption arises that the previous marriage has been dissolved by divorce, and the burden of proof is upon the party seeking to set aside the latest marriage to show that the prior marriage has not been dissolved by divorce. Ellis v. Ellis, 50 Ala.App. 67, 277 So.2d 102 (Ala.Civ.App.1973). One method by which this presumption can be overcome is to prove, by appropriate court records from the places the parties to the first marriage have lived, that a divorce has not been granted to either party to the first marriage.”
Leonard v. Leonard, 560 So.2d 1080, 1082-83 (Ala.Civ.App.1990). The presumption that a spouse previously married to another was divorced from the former spouse must be accepted cautiously so as not to require courts to presume as true what may be false, and that presumption is overcome when circumstances require a reasonable inference to the contrary. Dorsey, supra.
In addition to the testimony, Deborah presented a certified copy of a divorce complaint filed by Brenda on March 14, 1997,[1] and a judgment of divorce entered by the Circuit Court of Mobile County. The evidence tends to show that a marriage existed between Brenda and James and that they had not been divorced at the time James contracted marriage with Deborah in May 1996. This conclusion is strengthened by James’s own motion to dismiss the divorce action involving Deborah based on the judgment of the Mobile Circuit Court. James could have but one wife and, because he was legally married to Brenda at the time he contracted marriage with Deborah, his marriage to Deborah was null and void. Dorsey, supra. We conclude that Deborah satisfied the burden placed upon her by Leonard, supra, and that the court erred in entering a judgment of divorce rather than one of annulment. Accordingly, we reverse the judgment insofar as it purported to divorce James and Deborah; and we remand the case for the court to enter an order consistent with this opinion.
Deborah next argues that the court erred in failing to invoke its equitable powers to award her certain moneys. She alleges that she incurred certain expenses and a loss of income as a result of her union with James — $2,730.50 in wedding expenses, $4,519.90 in payments on a boat that James retained after the separation, and approximately $94,000 loss of income from 1996 through 1998. A court may properly make a property award in an annulment proceeding. See Nettles v. Nettles, 47 Ala.App. 448, 256 So.2d 189 (Civ.1971); Hackmeyer v. Hackmeyer, 268 Ala. 329, 106 So.2d 245 (1958). A detailed recitation of the evidence relevant to this issue is not necessary. Suffice it to say that the trial court heard disputed evidence on each point and then entered a judgment based on that evidence. The judgment of the court is presumed correct, and we may not disturb that judgment on appeal unless the judgment is plainly and palpably wrong. Helms, supra. After carefully reviewing the record, we conclude that the court’s judgment as to this issue is supported by the evidence and is due to be affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., concur in the result.

. We note a discrepancy between the date and place of the marriage as alleged in the divorce complaint and as testified to by Brenda in her deposition.